STATE of Missouri, Respondent,

v.

Jerry F. CLARK, Appellant.

No. ED 98438.

Missouri Court of Appeals, Eastern District, Division Three.

July 16, 2013.

Edward S. Thompson, Saint Louis, MO, for appellant.

Jessica P. Meredith, Jefferson City, MO, for respondent.

## OPINION

ANGELA T. QUIGLESS, Judge.

Jerry F. Clark ("Defendant") appeals the judgment entered upon a jury verdict convicting him of one count of stealing from a person and one count of second-degree assault. Defendant claims that the trial court erred in denying his *Batson* challenges to venirepersons Green and Moore. We affirm.

## I. BACKGROUND

Defendant was charged with one count of second-degree robbery and one count of second-degree assault. The case proceeded to trial and the State made six peremptory strikes, at least four of which were African–American venirepersons. Following *voir dire*, Defendant objected to all four strikes on the basis of race pursuant to *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The trial court conducted a *Batson* hearing with respect to those jurors and denied the objections. Only two of those objections are at issue in this appeal: the objections to the peremptory strikes of Ms. Green, an African–American female, and Mr. Moore, an African–American male. The record does not indicate the final racial makeup of the jury. Defendant was convicted of stealing from a person, a lesser-included offense to second-degree robbery, and second-degree assault. Because Defendant does not contest the sufficiency of the evidence supporting his convictions, a full recitation of the facts pertaining to those convictions is unnecessary. Defendant appeals the court's denial of his *Bat-son* challenges to venirepersons Green and Moore.

## II. DISCUSSION

### A. Standard of Review

Appellate courts will reverse trial court rulings on *Batson* challenges only if the ruling is clearly erroneous. *State v. McFadden*, 216 S.W.3d 673, 675 (Mo. banc 2007). A finding is clearly erroneous when the reviewing Court is left with the definite and firm impression that a mistake has been made. *Id.* In reviewing a trial court's decision regarding a *Batson* challenge, the trial court is accorded great deference because its findings of fact largely depend on its evaluation of credibility and demeanor. *Kesler–Ferguson v. Hy–Vee, Inc.*, 271 S.W.3d 556, 558 (Mo. banc 2008).

### B. Procedure for *Batson* Challenges to Peremptory Strikes

The Missouri Supreme Court has set forth a three-part procedure to be followed when confronted with a timely *Batson* challenge. First, the defendant must raise the challenge with regard to one or more specific venirepersons struck by the State and identify the cognizable racial group to which the venirepersons belong. *State v. Parker*, 836 S.W.2d 930, 939 (Mo. banc 1992). Then, the State must proffer reasonably specific and clear race-neutral explanations for the strikes. *Id.* Finally, the defendant must show that the State's proffered reasons for the strikes were pretextual and that the strikes were racially motivated. *Id.* The existence of similarly-situated Caucasian jurors who were not struck by the State is probative of pretext. *Id.* at 940. While not dispositive, this factor is described as "crucial." *State v. Marlowe*, 89 S.W.3d 464, 469 (Mo. banc 2002). Further factors considered in de-

termining pretext include: (1) the "degree of logical relevance between the proffered explanation and the case to be tried;" (2) the prosecutor's credibility based on statements made during *voir dire* and the court's past experiences with the prosecutor; and (3) the demeanor of the excluded venirepersons. *Id.* at 469–70. The ultimate issue is whether Defendant has shown that the State's reasons for striking the venireperson were pretextual.

## C. The Trial Court Did Not Clearly Err in Denying Defendant's *Batson* Challenge as to Venireperson Green

■ In his first point on appeal, Defendant argues that the trial court erred in denying his *Batson* challenge to the State's peremptory strike of venireperson Green based on the existence of a similarly-situated Caucasian juror who was not struck. *See Parker*, 836 S.W.2d at 940. The State supported the peremptory strike of Green on the grounds that she was the victim of a house robbery only six months ago, was unhappy with the performance of the police in that situation, and had a cousin who was charged and arrested in an assault case within the last year. Defendant argues that Ms. Nasrallah, a Caucasian female, was a similarly-situated juror and was not included in the State's peremptory strikes. Nasrallah had her home broken into twice in 2005, had been satisfied with the police performance in those cases, and had a close friend from high school that was convicted of murder eighteen years prior to the jury selection.

While a *"per se* rule that . . . there [be] an exactly identical white juror would leave *Batson* inoperable," Green and Nasrallah were not sufficiently similarly-situated. *Miller–El v. Dretke*, 545 U.S. 231, 247 n. 6, 125 S.Ct. 2317, 162 L.Ed.2d 196 (2005). Green was a recent victim of a robbery with the crime fresh in her mind.

Additionally, because Green was unhappy with the performance of law enforcement in her case, she could view the State's case in an unfavorable light. In contrast, Nasrallah was a victim to crimes more removed from the present and was satisfied with the law enforcement in those cases. The Missouri Supreme Court has noted that a "generally positive" attitude toward law enforcement is "usually favorable to the State's position." *State v. McFadden*, 191 S.W.3d 648, 657 (Mo. banc 2006). Further, Green had a family member who was convicted of a crime within the last year. This is unlike venireperson Nasrallah who knew of a non-relative that had been charged eighteen years prior. Having a family member in prison is a race-neutral reason for making a peremptory strike. *State v. Cole*, 71 S.W.3d 163, 173 (Mo. banc 2002). Accordingly, Green and Nasrallah were not similarly-situated in that Green had *recently* been the victim of a crime, was *unhappy* with the police performance in her case, and had a *family member* who had been convicted of a crime within the last year.

■ It is the defendant's burden to show that the proffered reasons for the peremptory strike are "merely pretextual and that the strikes were racially motivated." *State v. Bateman*, 318 S.W.3d 681, 689 (Mo. banc 2010) (quoting *Parker*, 836 S.W.2d at 939). Defendant failed to show that the State's peremptory strike of Green was racially motivated. The trial court did not clearly err in denying Defendant's *Batson* challenge as to Ms. Green. Point one is denied.

## D. The Trial Court Did Not Clearly Err in Denying Defendant's *Batson* Challenge as to Venireperson Moore

■ In his second and final point on appeal, Defendant argues that the trial

court clearly erred in denying the *Batson* challenge to the State's peremptory strike of venireperson Moore because a similarly-situated Caucasian juror was not struck and the State did not attempt to rehabilitate Moore following his answers during *voir dire*. The State exercised a peremptory strike to exclude Moore from the jury pool on the grounds that he was a victim of a robbery who did not contact the police, he had multiple relatives that were incarcerated for various crimes, and he was not completely forthcoming during *voir dire*. Defendant argues that Mr. Simpson, a Caucasian male who was not struck by the State, was similarly-situated because he had been robbed at gunpoint, was aware of a friend's brother that was involved in several robberies and assaults, and stated during *voir dire* that "some of the testimony might strike a little close to home" for him, though he agreed that he would be able to follow the instructions of the court.

Again, while a *"per se* rule that ... there [be] an exactly identical white juror would leave *Batson* inoperable," Moore and Simpson were not sufficiently similarly-situated. *Miller–El,* 545 U.S. at 247 n. 6, 125 S.Ct. 2317. Moore is distinguished from Simpson in three ways.

■ First, Moore was the victim of a robbery but *did not* report that robbery to the police, while Simpson did report his robbery to the police. As previously indicated, the Missouri Supreme Court has noted that a "generally positive" attitude toward law enforcement is "usually favorable to the State's position." *McFadden,* 191 S.W.3d at 657. Moore's failure to report a crime could indicate that he did not have a generally positive attitude toward law enforcement and, as such, would not be favorable to the State's position.[1] Second, Moore had *family members* who had been incarcerated, whereas Simpson knew of a friend's brother who had been involved in several robberies and assaults. *See Cole,* 71 S.W.3d at 173 (having an incarcerated family member is a race-neutral reason for a peremptory strike). Third, Moore seemed dismissive and was not completely forthcoming during *voir dire*. Specifically, the State was concerned with Moore's demeanor in answering questions concerning Defendant's right not to testify and with his attitude while speaking about his incarcerated family members. Because a "venireperson's 'hesitation and body language during questioning' are legitimate bases for using a peremptory strike," the State had a valid and race-neutral reason to strike him from the jury pool. *State v. Dow,* 375 S.W.3d 845, 850 (Mo.App.W.D.2012) (quoting *State v. Morrow,* 968 S.W.2d 100, 114 (Mo. banc 1998)). Though Moore unequivocally indicated that he could be fair and impartial in evaluating the case at hand, the State is allowed to "play hunches" that are race-neutral and the court is "not required to probe reasons assigned for a challenge so as to determine whether the reasons are sound." *State v. Payne,* 958 S.W.2d 561, 565 (Mo.App.E.D.1997). Accordingly, Moore and Simpson were not similarly-situated in that Moore had been victim to a crime but *did not* report it, had *family members* who had been incarcerated, and seemed dismissive during *voir dire*.

---

1. Defendant also argues that, had Moore's refusal to call the police following his robbery "actually mattered" to the State, Moore would have been asked about it. *See Miller–El,* 545 U.S. at 246, 125 S.Ct. 2317 (the State's failure to engage in any meaningful *voir dire* examination on a subject the State alleges it is concerned about is evidence suggesting that the explanation is a sham and a pretext for discrimination) (internal quotation omitted). However, in light of the State's other race-neutral reasons for striking Moore, we do not find this argument to be persuasive.

"[B]ecause the trial judge's findings 'largely will turn on evaluation of credibility, a reviewing court ordinarily should give those findings great deference.'" *State v. Antwine,* 743 S.W.2d 51, 66 (Mo. banc 1987) (quoting *Batson,* 476 U.S. at 98 n. 21, 106 S.Ct. 1712). For that reason, we give great deference to the trial judge's assessment of the legitimacy of the State's explanation for the strike.

Defendant failed to show that the State's peremptory strike of Moore was racially motivated. The trial court did not clearly err in denying Defendant's *Batson* challenge as to Mr. Moore. Point two is denied.

### III. CONCLUSION

The judgment is affirmed.

ROBERT G. DOWD, JR., P.J., and ROY L. RICHTER, J., concur.