

# In the Missouri Court of Appeals
# Eastern District

## DIVISION THREE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | ED106450 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Lincoln County |
| | ) | 17L6-CR00428 |
| v. | ) | |
| | ) | |
| SHAAMAR R. STEELE, | ) | Honorable David H. Ash |
| | ) | |
| Appellant. | ) | FILED:  April 16, 2019 |

## Introduction

Shaamar R. Steele (Steele) appeals from a sentence and judgment entered pursuant to a jury verdict convicting him of unlawful possession of a weapon, assault of law enforcement officers, resisting arrest, and possession of drug paraphernalia.  He asserts the trial court erred in granting the State's motion in limine and in overruling his *Batson*[1] challenge.  We affirm.

## Background

The State charged Steele as a prior and persistent offender in an amended information with one count of possession of a controlled substance (Count I), one count of unlawful possession of a weapon (Count II), two counts of assault of a law enforcement officer in the second degree (Counts III and IV), one count of resisting arrest (Count V), and one count of

---

[1] *Batson v. Kentucky*, 476 U.S. 79 (1986).

misdemeanor possession of drug paraphernalia (Count VI).  In brief summary, the following evidence was adduced at the January 2018 trial, as relevant to the issues raised on appeal.  Both Officer Jason Maskey and Officer Sean Hendel of the City of Louisiana, Missouri Police Department testified as follows.  On October 23, 2016, they questioned Steele pursuant to an ongoing investigation.  As Officer Hendel questioned Steele, Officer Maskey noticed a bulge in Steele's waistband that appeared to be a weapon.  When asked what was in his waistband, Steele began sweating and acting nervously.  The officers requested to perform a pat down, and Steele ran away.  Officer Maskey announced Steele was under arrest, and both Officers Maskey and Hendel gave chase, eventually cornering Steele against a chain-link fence.  When cornered, Steele reached into his waistband, drew out a large knife that he raised above shoulder level, and started towards the officers.  Fearing physical harm, Officer Hendel announced "Taser" three times and tased Steele.  The Taser prongs were later removed from Steele's back.  Officer Hendel submitted a use-of-force report in accordance with Louisiana Police Department policy.  A jury convicted Steele of unlawful possession of a weapon, assault of law enforcement officers, resisting arrest, and possession of drug paraphernalia, as charged in Counts II-VI.[2]  Steele does not challenge on appeal the sufficiency of the evidence supporting his convictions.

*Taser Certification*

The State filed a pretrial motion in limine to prohibit argument or testimony regarding the Taser certification of the two law enforcement officers involved Steele's arrest.  The trial court granted the State's motion in limine after a hearing.  At trial, Steele reasserted his objection to the motion in limine and made an offer of proof presenting Officer Hendel's testimony and documents regarding his Taser certification.  Officer Hendel submitted a certificate of Taser

---

[2] The jury acquitted Steele of the charge in Count I.

training from the Mineral Area College Law Enforcement Academy dated May 11, 2012 ; a certificate of Taser training from Byrnes Mill Police Department—which is where he worked prior to the Louisiana Police Department—dated January 30, 2015 ; and a certificate of Taser training from the Louisiana Police Department dated August 23, 2017. Officer Hendel agreed he was trained and certified in operating a Taser, he had to recertify his training and certification once a year, and he was "not able to produce any certification" showing he was certified or recertified to use a Taser on October 23, 2016. Moreover, he further agreed that when he joined the Louisiana Police Department from the Byrnes Mill police department, he was not required to take a Taser class before he was issued a Taser. Steele argued that the jury should hear that Officer Hendel "was not certified" to use the Taser at the time he used it on Steele, because it was relevant to Officer Hendel's overall credibility. The trial court denied the offer of proof as irrelevant.

Further, Steele made an offer of proof of the testimony of April Epperson (Chief Epperson), the Chief of Police and Custodian of Records for the City of Louisiana, to the following. The Louisiana Police Department policy was that no officer was authorized to carry a firearm or a less lethal weapon unless he or she was certified with that weapon by a certified instructor. After the initial Taser certification, it was recommended but not required to be recertified every year. She agreed she could not produce a Taser certification for Office Hendel "through her department" that was valid on October 23, 2016. The trial court denied the offer of proof.

*Batson Challenge*

During voir dire, the State asked the venire panel if there was anyone who did not trust the police in general, further clarifying that the case involved an incident between two white

3

police officers and one black defendant. In response, Venireperson Number 26 volunteered that she might not be able to trust the police, stemming from some issues her father, who is black, had had with the police in Lincoln County in 2014, and her belief that race played a factor in their interaction.

The State used a peremptory strike against Venireperson Number 26, and Steele challenged the strike under *Batson v. Kentucky*, asserting the strike was an improper attempt to exclude Venireperson Number 26 on the basis of race. The trial court took judicial notice that in her questionnaire, Venireperson Number 26 identified herself as black. After arguments, the trial court overruled Steele's *Batson* challenge, concluding the State had stated an appropriate, neutral reason for its strike.

Following the jury's convictions on Counts II-VI, the trial court sentenced Steele as a prior and persistent offender to concurrent terms of fifteen years' imprisonment in the Missouri Department of Corrections on Counts III and IV, consecutive to five years' imprisonment on Count II, and concurrent to one-year terms in the county jail on Counts V and VI each, for a total sentence of 20 years' imprisonment. This appeal follows.

## Discussion

### Point I

In his first point on appeal, Steele argues the trial court abused its discretion in excluding Officer Hendel's and Chief Epperson's testimony regarding Officer Hendel's Taser certification on October 23, 2016, because impeaching him on his Taser certification was logically and legally relevant to the theory of defense, which was to attack the credibility of the officers' story. We disagree.

4

A trial court has broad discretion to admit or exclude evidence at trial, and we review its decision regarding the exclusion or admissibility of evidence for an abuse of that broad discretion. *State v. Blurton*, 484 S.W.3d 758, 769 (Mo. banc 2016). An abuse of discretion occurs when the trial court's ruling clearly offends the logic of the circumstances or is so arbitrary and unreasonable that it shocks the sense of justice and indicates a lack of careful consideration. *Id.* Our review is for prejudice, not mere error, and we will reverse only if the defendant demonstrates that the error was so prejudicial as to deprive him of a fair trial and there was a reasonable probability the trial court's ruling affected the outcome of the trial. *Id.*; *see also State v. Anderson*, 76 S.W.3d 275, 277 (Mo. banc 2002).

To be admissible, evidence must be both logically and legally relevant. *Blurton*, 484 S.W.3d at 777. "Evidence is logically relevant if it tends to make the existence of a material fact more or less probable." *Id.* (citation omitted). Likewise, evidence is legally relevant when the probative value of the evidence outweighs its costs, such as unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or cumulativeness. *Id.*; *Anderson*, 76 S.W.3d at 276. Thus, even logically relevant evidence can be excluded if its costs outweigh its benefits. *Anderson*, 76 S.W.3d at 276.

Steele's theory of defense was that he did not brandish a knife at the officers, contrary to the statements of Officer Hendel and Officer Maskey that he did. Steele sought to admit testimony from Officer Hendel and Chief Epperson that Officer Hendel was not certified to use a Taser, in order to impeach Officer Hendel's veracity and credibility. Specifically, Steele argued that Officer Hendel's lack of certification showed "his disregard for the regulations governing peace officers' use of less-than-lethal weapons and accordingly tends to erode his veracity and credibility as a witness."

5

In general, the credibility of a witness is always a relevant issue, and witnesses may be impeached on their character for truthfulness and veracity. *Mitchell v. Kardesch*, 313 S.W.3d 667, 676-77 (Mo. banc 2010). However, depending on the circumstances, the trial court may still exercise its discretion to limit the admission of evidence when the prejudicial effect outweighs the probative value of the evidence. *See id.* at 679; *see also State v. Watts*, 813 S.W.2d 940, 943 (Mo. App. E.D. 1991) (trial court may "limit or exclude the use of impeachment evidence whose prejudicial effect far out-distances its value to the jury as an aid for determining credibility") (citation omitted).

Here, the impeachment evidence of Officer Hendel's Taser certification or recertification was of negligible probative value and was outweighed by its likelihood to confuse or mislead the jury. The evidence Steele sought to admit did not, in fact, serve to make Officer Hendel less credible by demonstrating "his disregard for regulations." Rather, in Steele's offers of proof, Officer Hendel submitted Taser certifications from his law enforcement academy, dated May 11, 2012, and from the Byrnes Mill Police Department, dated January 30, 2015; and Chief Epperson testified that department policy did not require annual recertification. In sum, the evidence was that Officer Hendel was certified to use his Taser and he was not required to recertify every year, thus demonstrating he was in compliance with regulations.[3] For Steele to use this evidence to argue that Officer Hendel was not in compliance with regulations in order to impeach his overall veracity and credibility, was both disingenuous and potentially confusing to the jury. The trial court did not abuse its discretion in excluding this evidence.

---

[3] To the extent Officer Hendel testified that he was required to be recertified every year, this assertion was not supported by any reference to a regulation, and, rather, was contradicted both by Chief Epperson's testimony and the fact that he was issued a department Taser with only his January 2015 certification.

Regardless, even if the trial court did abuse its discretion in excluding this impeachment evidence, Steele was not prejudiced because there is not a reasonable probability the trial court's decision affected the outcome of the trial. Steele sought to impeach Officer Hendel's credibility to undermine his testimony that Steele brandished a knife. However, Officer Maskey also testified that Steele displayed a knife in a threatening manner, causing Officer Maskey to fear for his life and for Officer Hendel's life. Steele did not likewise seek to impeach Officer Maskey's testimony on the basis of veracity and credibility. In light of the unchallenged, corroborating evidence from Officer Maskey, Steele cannot meet his burden to show there was a reasonable probability that the outcome of the trial would have been different had the trial court had admitted the impeachment evidence of Officer Hendel. *See Anderson*, 76 S.W.3d at 277.

Point denied.

## Point II

In his second point on appeal, Steele argues the trial court clearly erred in overruling his objection to the State's peremptory strike of Venireperson Number 26 because the State did not assert a facially race-neutral reason for its peremptory strike and the stated reason was a pretext for discrimination. We disagree.

This Court will set aside the trial court's ruling with regard to a *Batson* challenge only if it is clearly erroneous. *State v. McFadden*, 191 S.W.3d 648, 651 (Mo. banc 2006). A ruling is clearly erroneous when the reviewing court is left with the definite impression that a mistake has been made, considering the totality of the circumstances. *Id.* In the *Batson* context, because the trial judge's findings largely turn on an evaluation of credibility and demeanor, we give great deference to the trial court's findings. *State v. Burnett*, 492 S.W.3d 646, 653 (Mo. App. E.D. 2016).

7

The State may not use a peremptory challenge to strike a venireperson solely on the basis of race. *See Batson v. Kentucky*, 476 U.S. 79, 84 (1986). Missouri courts follow a three-step process to analyze a *Batson* challenge. *State v. Carter*, 415 S.W.3d 685, 688-89 (Mo. banc 2013). First, a defendant must challenge one or more specific venirepersons struck by the State and identify a cognizable racial group to which they belong. Second, the State must provide a facially race-neutral reason that is more than a simple denial of discriminatory purpose. Third, the defense must show that the State's reason was a pretext for discrimination and that the true reason for the strike was race. *Id.* One way the defense can show pretext is to present "side-by-side comparisons" of venirepersons struck with those allowed to serve. If the stated reason for striking an African-American venireperson applies to an otherwise-similar Caucasian venireperson who was permitted to serve, that can establish discrimination. *McFadden*, 191 S.W.3d at 651. It is not required that the similarly situated Caucasian venireperson be identical to the African-American venireperson, as that would leave *Batson* inoperable, but they must be sufficiently similarly situated. *See State v. Bateman*, 318 S.W.3d 681, 689-90 (Mo. banc 2010); *State v. Clark*, 407 S.W.3d 104, 107 (Mo. App. E D. 2013).

Here, during voir dire, the State asked the venire panel if there was anyone who did not trust the police in general, further clarifying that the case involved an incident between two white police officers and one black defendant. In response, Venireperson Number 26 volunteered that she might not be able to trust the police, stemming from some issues her father, who is black, had had with the police in Lincoln County in 2014, and her belief that race played a factor in their interaction. However, in response to questions from counsel for Steele, Venireperson Number 26 stated she had reflected on her earlier comment and clarified it was "more of an individual thing. It is not even so much … race, but I did want that to be known that even

8

whether it is white or it is black, I have seen unjust on both parts." Counsel for Steele then asked if she would be able to listen to the evidence presented and be fair and partial to both sides, and she responded: "yes."

The State used a peremptory strike against Venireperson Number 26, and Steele challenged the strike under *Batson v. Kentucky*, asserting the strike was an improper attempt to exclude Venireperson Number 26, who was African-American, on the basis of race. The State articulated it had struck Venireperson Number 26 "because of her stated answer wherein she indicated that her father had had some negative interactions with law enforcement … [and] she felt he was treated unfairly."

Steele responded the State's articulated reason was a pretext for discrimination, in that there were other similarly situated venirepersons who had recounted experiences with law enforcement but were not struck. The trial court overruled Steele's *Batson* challenge, concluding the State stated an appropriate, neutral reason for its strike. The trial court noted Venireperson Number 26 "was pretty clear in the beginning that she had a problem with law enforcement and with their treatment of her father, who was black." The court further concluded that because the other venirepersons had not stated they had a family member who was treated unfairly by law enforcement, they were not similarly situated to Venireperson Number 26. Although Steele argued it was impossible for the other Caucasian venirepersons to similarly assert unfair treatment on the basis of race, the trial court clarified the key issue was that no other venirepersons had stated law enforcement had treated someone in their family unfairly.

Steele argues on appeal that the State did not assert a facially race-neutral reason for its peremptory strike of Venireperson Number 26. The State's articulated reason for its strike was that her father had had some negative interactions with law enforcement and she believed he had

9

been treated unfairly. Steele argued, however, that because Venireperson Number 26 believed her father's race played a factor in the unfair treatment, race was inextricably intertwined with the State's peremptory strike. Steele's argument is unavailing.

While the State cannot strike a venireperson because of his or her race, *Batson* does not require that the State's articulated reason for its strike be "unrelated to race." *See State v. Rollins*, 321 S.W.3d 353, 366 (Mo. App. W.D. 2010) (quoting *Hernandez v. New York*, 500 U.S. 352, 375 (1991) (O'Conner, J., concurring)). In *Rollins*, the Western District found that the State's explanation for striking an African-American venireperson who had been the victim of racial discrimination by the police was race-neutral on its face, because the reason for the strike was that he had had an experience that negatively influenced the way he perceived police officers. *Rollins*, 321 S.W.3d at 367. Venirepersons of any race or ethnicity may be struck on the ground that they have experienced discrimination from a police officer. *Id.* Even if race has been mentioned by the venireperson, we look to the State's explanation for whether it objectively or facially relied on race in its strike. *See State v. Mosley*, 534 S.W.3d 879, 885 (Mo. App. W.D. 2017). Here, similar to *Rollins*, the State explained it struck Venireperson Number 26 because of her negative experience with law enforcement, in that she believed they had treated her father unfairly, which is a facially race-neutral reason for the peremptory strike.

As for Steele's argument that the State's reason for striking Venireperson Number 26 was not facially race-neutral because she rehabilitated herself by clarifying that regardless of race she had seen people on both sides be unjust, and by saying she could be fair and impartial, rehabilitation does not prove a *Batson* claim in the context of peremptory strikes. While a venireperson's statement that he or she can set aside a prior experience and be fair and impartial is important in the context of a challenge for cause, the justification for a peremptory strike can

be any non-discriminatory reason regardless of rehabilitation.  *See Rollins*, 321 S.W.3d at 367-68 ("A venireperson's statement that he or she can set aside a prior experience and be "fair and impartial" does not resolve the issues in a *Batson* context where the party seeking to strike the venireperson might have reason to think otherwise"); *see also State v. Kempker*, 824 S.W.2d 909, 911 (Mo. banc 1992) (when making peremptory challenges, "[p]rosecutors may still use horse sense and play hunches, so long as the factors they rely on are racially neutral").

Steele next argues the State's explanation was a pretext for discrimination because there were similarly situated jurors who testified to prior personal experience with law enforcement but were not struck.  Specifically, Steele pointed to Venireperson Number 28,[4] who stated she had a cousin who was a retired bailiff and a close friend whose husband was a sheriff, but who also stated: "I had a boyfriend once who went to trial for DWI, and I saw the police try to lie, and then they tried to lie, so both sides were full of bologna."  When asked if she could be fair and impartial, she responded by referencing her cousin the retired bailiff, but she ultimately agreed she would not be more favorable to one side or the other.  Venireperson Number 28 served on the jury.

While the defense need not produce an "exactly identical" Caucasian juror to show pretext, the compared juror must be sufficiently similarly situated.  *Clark*, 407 S.W.3d at 107. Here, Venireperson Number 26 stated she might not be able to trust the police because law enforcement had treated her father unfairly.  Venireperson Number 28 did not similarly state she might not be able to trust the police.  Comparing the statements of Venirepersons Number 26 and

---

[4] While Steele also argues on appeal that Venireperson Number 9 was similarly situated because she "had prior personal experience with law enforcement," our review of the record does not show that Venireperson Number 9 testified to experience with law enforcement.  Rather, she stated only that when she worked in a store she had been robbed by someone who said he had a gun, but she clarified she was not so emotionally affected by the experience that she could not consider the evidence.  She did not reference her experience with law enforcement.

28, they were not similarly situated, in that Number 26 explicitly stated she might not be able to trust police based on her father's negative experience, and Number 28 did not. The burden is on the defense to show pretext, and Steele failed to meet his burden on the facts here to show the State's peremptory strike of Venireperson Number 26 was racially motivated. *See Carter*, 415 S.W.3d at 688-89. Thus, the trial court did not clearly err in denying Steele's *Batson* challenge.

Point denied.

Conclusion

The judgment of the trial court is affirmed.

_____
Robin Ransom, J.

Sherri B. Sullivan, P.J., and
James M. Dowd, J., concur.