

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED99089 |
| | ) | |
| Plaintiff/Respondent, | ) | Appeal from the Circuit Court of |
| | ) | City of St. Louis |
| vs. | ) | |
| | ) | Honorable David L. Dowd |
| KEVIN MURRAY, | ) | |
| | ) | |
| Defendant/Appellant. | ) | Filed: April 15, 2014 |

### INTRODUCTION

Kevin Murray ("Defendant") appeals from the trial court's judgment entered upon a jury verdict convicting him of one count of robbery in the first degree and one count of armed criminal action. Defendant argues that the trial court erred by: (1) admitting into evidence the victim's identification; (2) denying his Batson[1] challenge to the State's peremptory strikes of three African-American venirepersons; and (3) overruling his objections to the submission of jury instructions. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On February 2, 2011, just before one o'clock in the morning, the victim in this case, D.J. ("Victim"), was walking on Arsenal Street in the City of St. Louis when two men, whom he later identified as Defendant and Shyrus Woods, approached him from

---

[1] Batson v. Kentucky, 476 U.S. 79 (1986).

behind and demanded his money at gunpoint. Victim later testified he came "eye-to-eye" with Woods holding a gun. When Woods threatened to shoot, Victim told the men to take his wallet. Defendant stood to Victim's right-hand side and Victim testified he got a good look at Defendant as he approached and retrieved Victim's wallet from his pocket. Woods then ordered Victim to face the other way, and Defendant and Woods fled.

Using his cellular phone, Victim testified he immediately called the police, who arrived at the scene in "[l]ess than a minute." Victim provided a description of the two men and the direction they fled to the police officers. Two police cars then drove off in search of the suspects while Victim answered questions in the backseat of a third police car for approximately fifteen minutes. While searching the nearby streets, police encountered Defendant and Woods, and detained them because they matched the description of the suspects. Police transported Victim to where they were holding Defendant and Woods to conduct an identification procedure commonly known as a "show-up." Victim arrived at the show-up and immediately identified Defendant as the man who took his wallet. Police then presented Woods, and Victim identified him as the gunman.

Police arrested Defendant and Woods, and the State charged each with one count of robbery in the first degree[2] and one count of armed criminal action.[3] The State tried Defendant and Woods together as co-defendants during a single jury trial. Before trial, Defendant filed a motion to suppress his identification from the show-up, arguing that police had obtained it using impermissibly suggestive procedures. After a hearing, the

---

[2] § 569.020, R.S.Mo. (2000),
[3] § 571.015, R.S.Mo. (2000)

trial court denied the motion as well as his later objections at trial, and admitted the identification testimony into evidence.

During jury selection, Defendant raised Batson challenges when the prosecutor moved to strike six African-Americans from the venirepanel. Ultimately, the court overruled Defendant's challenge to four of the six African-Americans peremptorily struck by the State.

At the jury instruction conference, Defendant objected to the State's proposed verdict directors because they failed to specify the time and location of the robbery. Defendant argued this lack of information was misleading because it did not include the "time" and "location" of the robbery, and it "gives too much leeway without modeling the indictment in this case." The trial court denied his objection.

After deliberations, the jury convicted Defendant and Woods of robbery and armed criminal action. The trial court sentenced Defendant to concurrent terms of ten years' imprisonment for the robbery and six years' imprisonment for armed criminal action. The trial court denied Defendant's timely filed a motion for judgment of acquittal, or new trial. This appeal follows.

STANDARD OF REVIEW

We review the trial court's denial of a motion to suppress identification testimony, by considering the evidence presented at both the suppression hearing and at trial to determine whether sufficient evidence exists to support the trial court's ruling. State v. Nelson, 334 S.W.3d 189, 193 (Mo. App. W.D. 2011). "[W]e review the facts and inferences therefrom in the light most favorable to the trial court's ruling, and disregard all contrary inferences." State v. Chambers, 234 S.W.3d 501, 512 (Mo. App. E.D. 2007).

3

We will not disturb the trial court's decision to admit or exclude such evidence unless there has been an abuse of discretion. Id.

"We review the trial court's denial of a Batson challenge for clear error." State v. Thomas, 407 S.W.3d 190, 196 (Mo. App. E.D. 2013). We will reverse the court's decision on a finding of clear error only if we are left with a definite and firm impression that a mistake has been made. State v. McFadden, 216 S.W.3d 673, 675 (Mo. banc 2007). We accord the trial court "great deference" on a Batson challenge "because its findings of fact largely depend on its evaluation of credibility and demeanor." State v. Bateman, 318 S.W.3d 681, 687 (Mo. banc 2010).

Lastly, we review a "claim of instructional error de novo, evaluating whether the instruction was supported by the evidence and the law." State v. Pennell, 399 S.W.3d 81, 92 (Mo. App. E.D. 2013). If an error occurred in submitting the instruction, we will reverse the trial court's decision only if the instructional error misled the jury and is so prejudicial that it deprived the defendant of a fair trial. State v. Tisius, 362 S.W.3d 398, 412 (Mo. banc 2012).

DISCUSSION

In his first point, Defendant contends the trial court erred in overruling his motion to suppress Victim's identification during the show-up because the police procedures were impermissibly suggestive, and therefore unreliable. We disagree.

We review the trial court's decision to admit identification testimony into evidence using a two-pronged test. State v. Secrease, 859 S.W.2d 278, 279 (Mo. App. E.D. 1993). "The first prong asks whether the pre-trial identification procedure was impermissibly suggestive." Thomas, 407 S.W.3d at 195. Only if the answer to the first

4

prong is "yes," will we move to the second prong and assess the reliability of the identification. Id. ("[A] defendant must clear the suggestiveness hurdle before procuring a reliability review.").

"A pre-trial identification procedure is unduly suggestive if the identification results not from the witness's recollection of first-hand observations, but rather from the procedures or actions employed by the police." Chambers, 234 S.W.3d at 513. Police procedures will be found unduly suggestive if the witness's identification at the scene of the arrest is made in response to the suggestions or encouragement of the police, rather than due to the witness's own "observation and visual recollection of the defendant's appearance." State v. Overstreet, 694 S.W.2d 491, 495 (Mo. App. E.D. 1985).

Here, before conducting the show-up, police officers informed Victim that they had located two suspects who "might" fit the description of the suspects. The officers then drove Victim to where Defendant and Woods were held. When Victim arrived, Defendant was standing next to a police car and Woods was handcuffed and sitting in the backseat of another police car. On arrival, the officers did not give Victim any instructions. Victim remained in the police car that transported him to the show-up. The officers presented Defendant for identification by shining a spotlight on his face and Victim immediately identified him as the man who took his wallet. Officers then presented Woods, in handcuffs, from the backseat of a police car. Victim identified him as the gunman.

These facts do not establish that the officers employed unduly suggestive procedures at the show-up. This Court has held that police may "inform the identifying witness that the police have a suspect that [the witness] might be able to identify." Id. at

5

495. It is not impermissibly suggestive for the police to promptly present, for identification, a single suspect, in handcuffs at the scene of his arrest. See id. (upholding validity of show-up even where defendant was laying on the grass, handcuffed, and surrounded by marked police cars with flashing lights); see also Secrease, 859 S.W.2d at 279 ("Pre-trial 'show-ups' are valid under Missouri law even where the subject is in handcuffs and the officers say Defendant is a suspect."). "It is settled law in Missouri that the prompt showing of a suspect to the victims of a crime is a proper procedure, justified by the exigencies of the situation; such action may immediately indicate to the officers whether the suspect should be released or held, or whether they should continue the search." State v. Ballard, 657 S.W.2d 302, 308 (Mo. App. E.D. 1983). And where, as here, a suspect has been detained in the immediate vicinity of the robbery shortly after its occurrence, the exigencies of the situation justify the type of show-up that police conducted. See e.g. State v. Johnson, 628 S.W.2d 904, 907-908 (Mo. App. E.D. 1982) ("Some intimation, implication or suggestion that officers suspect a subject presented to witnesses inevitably inheres in every show-up, else why conduct a show-up?"). Additionally, at trial, Victim testified that he did not feel compelled to identify either Defendant or Woods at the time of the show-up, and if he thought the officers had detained the wrong suspects, he would have said so at the show-up. Thus, credible evidence supported the trial court's determination that Victim's identification at the show-up was not a result of impermissibly suggestive police procedures. Accordingly, the trial court did not abuse its discretion by allowing Victim's identification testimony into evidence. Point denied.

6

In his second point, Defendant argues the trial court erred in overruling his <u>Batson</u> challenge to the State's peremptory strikes of three African-American venirepersons, G.P., D.W., and J.J. Specifically, Defendant argues that the prosecutor's explanations for striking G.P., D.W., and J.J., were all shown to be pretextual. We disagree.

<u>Batson</u> recognizes it is a violation of the Equal Protection Clause for a party to exercise a peremptory strike of a potential juror solely on the basis of that juror's race, ethnicity, or gender. <u>State v. McFadden</u>, 369 S.W.3d 727, 739 (Mo. banc 2012). Missouri courts have established a three-step procedure for a <u>Batson</u> challenge. <u>Id.</u> The first step requires that the party who raised the <u>Batson</u> challenge object to the strike of a specific venireperson, and identify the protected class to which the venireperson belongs. <u>State v. Parker</u>, 836 S.W.2d 930, 939 (Mo. banc 1992). The second step shifts the burden to the party exercising the strike to come forward with a reasonably specific and clear race-neutral explanation for the strike. <u>Id.</u> At this stage, the proffered explanation will be deemed race-neutral if it is not inherently discriminatory. <u>State v. Marlowe</u>, 89 S.W.3d 464, 468-469 (Mo. banc 2002). If satisfied, the third step shifts the burden back to the party who raised the <u>Batson</u> challenge to present evidence showing that the explanation offered was merely pretextual and that the strikes were racially motivated. <u>Id.</u>

We determine whether an explanation is pretextual by considering if it is plausible in light of the totality of the facts and circumstances of the case. <u>Parker</u>, 836 S.W.2d at 939. A plausible explanation is one that is race-neutral, clear and reasonably specific, legitimate, and related to the facts or issues of the case. <u>McFadden</u>, 216 S.W.3d at 676. "A legitimate reason is not one that makes sense but one that does not deny equal protection." <u>State v. Weaver</u>, 912 S.W.2d 499, 509 (Mo. banc 1995). Nevertheless,

"implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination." Marlowe, 89 S.W.3d at 469 (quoting Purkett v. Elem, 514 U.S. 765, 768 (1995)). Additionally, we will consider a list of non-exclusive factors, including: "the explanation in light of the circumstances; similarly situated jurors not struck; the relevance between the explanation and the case; the demeanor of the [prosecutor] and excluded venire members; the court's prior experiences with the prosecutor's office; and objective measures relating to motive." State v. Johnson, 284 S.W.3d 561, 571 (Mo. banc 2009). Although the presence of similarly situated panelists who remain on the panel is "crucial," and "often determinative of pretext," their presence is not dispositive of pretext. Bateman, 318 S.W.3d at 684, 690.

We first consider the prosecutor's peremptory strike of G.P., an African-American female. During voir dire, the prosecutor asked whether anyone on the panel had "a close friend or family member . . . accused, charged or arrested for a robbery?" G.P. responded in the affirmative, stating, "I believe my brother was charged with taking money from work." The prosecutor then engaged G.P. in a brief dialogue in which she explained that her brother was charged and found guilty of "taking money" in another state approximately a decade earlier. G.P. also stated the experience would not affect her ability to listen to the evidence in this case because she thought her brother's case was handled properly. The prosecutor then asked G.P. about her employment and she responded that she worked as a writer and editor in the marketing department of a school. The prosecutor posed no further questions.

Later, at the close of voir dire, the prosecutor moved to strike G.P. from the panel. Defendant's counsel raised a Batson challenge on the grounds that G.P. "is a black female." The prosecutor then offered the following explanation for his strike:

[PROSECUTOR]: [G.P.] seemed to me, well, first she told us her occupation was a writer and editor. I didn't like her, I hate to say, excessive amount of education, but she seemed to me to be an overly educated person, which concerned me.

Also, she seemed to be a bit of a leader, which also concerned me and were factors in wanting to strike her. She also indicated that she had a close relative in her family, her brother, who had previously been charged.

She raised her hand when I was talking about robberies and then she said taking money. So I don't know if this was a robbery for money or slightly different than a robbery in that it was a taking of money. That concerned me and was another reason that I struck [G.P.].

At the instruction conference, Defendant argued these reasons were pretextual because the prosecutor did not strike several similarly situated white venirepersons. The prosecutor responded he had struck a similarly situated white female from the venire panel due to her education level, and then sought to distinguish the two remaining venirepersons cited by Defendant because neither had a close family member who was charged or convicted of a crime. The court considered the explanation and arguments, and overruled Defendant's Batson challenge, finding the reasons race neutral.

Here, the prosecutor stated his first reason for striking G.P. was due to her "excessive amount of education," which he characterized as "overly educated." While this explanation is potentially pretextual in nature, depending on how one interprets his meaning of "excessive" and "overly" educated, Defendant failed to argue this particular reason was pretextual at trial. Although Defendant now points to a similarly educated white male physician who remained on the panel, this fact was not brought to the attention of the trial court. "On appeal, we do not consider grounds for Batson challenges

9

that were not raised in the trial court." State v. Broom, 281 S.W.3d 353, 356 (Mo. App. E.D. 2009); see also State v. Nylon, 311 S.W.3d 869, 882-883 (Mo. App. E.D. 2010) (denying Batson challenge because defendant failed to challenge the State's justification). Consequently, we decline to consider Defendant's argument challenging this reason.

The prosecutor's second stated reason for striking G.P. was that "she seemed a bit of a leader." Defendant argues he established that this reason was pretextual because he identified a similarly situated white female, D.B., who was a "manager" and thus, also necessarily possessed leadership qualities. But leadership is a characteristic that does not necessarily flow from a job title. Instead, it is akin to demeanor and, like demeanor, can best be discerned from a person's outward bearing. Just as the trial court is in the best position to determine the demeanor of venirepersons, so too would the trial court be in a better position to determine whether D.B. possessed similar leadership qualities. See Broom, 281 S.W.3d at 358 (deferring to the trial court's determination of demeanor). Here, the trial court did not find D.B. similarly situated to G.P. We defer to the trial court since it was in a better position to gauge whether G.P. possessed the leadership characteristic, whether there were any similarly situated white venirepersons with this same characteristic, and ultimately the prosecutor's credibility and sincerity in offering this as a legitimate reason. See State v. Antwine, 743 S.W.2d 51, 66-67 (Mo. banc 1987) (recognizing great deference should be given in the Batson context when the trial court's findings turn on its assessment of the prosecutor's credibility and motives).

The prosecutor explained his third reason for striking G.P. as "she indicated that she had a close relative in her family, her brother, who had previously been charged [with a similar crime]." Defendant objected, and argued there were two similarly situated white

10

venirepersons, K.H. and M.W., who were not struck. The prosecutor argued these venirepersons were distinguishable because neither had a close family member convicted of a crime.

The prosecutor argued K.H. a white male who volunteered that his older brother had "snatched the inventory" from a former employer, could be distinguished because his older brother was never arrested or convicted for this act. The prosecutor also argued M.W., a white female, could be distinguished from G.P. because M.W. "talked about an ex-boyfriend who she has nothing to do with anymore," but G.P. had a "close family relative" convicted of the crime.

"[H]aving an incarcerated family member is a race-neutral reason for a peremptory strike." Id. at 108 (citing State v. Cole, 71 S.W.3d 163, 173 (Mo. banc 2002)). Furthermore, a venireperson who has a family member charged and convicted of a crime is distinguishable from a venireperson with a family member who was arrested for a crime. See e.g. Thomas, 407 S.W.3d at 197 (distinguishing between arrest and conviction of family members for similarly situated jurors); see also State v. Clark, 407 S.W.3d 104, 107 (Mo. App. E.D. 2013) (distinguishing between friends charged with a crime and family members actually convicted of a crime). A venireperson with an incarcerated family member is distinguishable from a venireperson with a friend who is incarcerated. See e.g. Clark, 407 S.W.3d at 107-108 (distinguishing between incarcerated family members and acquaintances).

Here, because G.P. was the only juror with a close family member convicted of a crime, the prosecutor adequately identified a race-neutral reason for striking G.P. Furthermore, Defendant failed to prove this reason was pretextual based on the existence

of similarly situated venirepersons. Because we accord "great deference" to the trial judge's findings of credibility, we find no clear error in the trial court's acceptance of the prosecutor's stated reasons for striking G.P. See Antwine, 743 S.W.2d at 66 (recognizing a reviewing court should ordinarily give great deference to a trial court's findings that largely turn on an evaluation of credibility).

Defendant also challenges the peremptory strike of J.J. Defense counsel challenged this strike because J.J. was a black male and "there's qualities about him that are beneficial to the State's case," because he was previously employed as a deputy with the federal court. The prosecutor acknowledged that J.J.'s history of employment could benefit the State, but explained he struck J.J. out of concern that J.J.'s prior experience might negatively affect his ability to impartially follow the court's instructions, as well as unduly influence the other jurors into following his lead during deliberations.

"Peremptory strikes can be based on occupation, so long as they are race and gender-neutral." State v. Brown, 998 S.W.2d 531, 545 (Mo. banc 1999); see also Nylon, 311 S.W.3d at 882 (upholding strike of venireperson based on employment). On appeal, Defendant argues that he sufficiently established the prosecutor's reason for striking J.J. was pretextual, because a similarly situated white venireperson, M.U., remained on the panel. But M.U. was a former police officer, not an employee of the court. Regardless, as the State notes, this argument was not made to the trial court. Again, we decline to find error based on an argument that the trial court was not accorded an opportunity to rule on. See Broom, 281 S.W.3d at 356. Thus, the prosecutor presented a race-neutral explanation for striking J.J. based on his occupation and Defendant failed to rebut this reason as

pretextual. Therefore, the court did not err in overruling Defendant's <u>Batson</u> challenge to the State's peremptory strike of J.J.

Defendant also objected to striking D.W., an African-American male. The prosecutor explained he struck D.W. because, when asked whether he could follow the court's instructions, D.W. equivocated and explained he would follow the law of the "Heavenly Father," if he perceived any contradiction between the two.

The inability of a prospective juror to impartially follow the court's instructions because of conflicts with personal beliefs is an acceptable reason for that juror's removal. <u>See</u> <u>State v. Gray</u>, 887 S.W.2d 369, 382 (Mo. banc 1994). During the instruction conference, the State explained it sought to strike D.W., inter alia, because "he discussed not being willing to follow the Court's law because he would be following the scripture." At trial, and on appeal, Defendant argues that the prosecutor's explanation was pretextual because a similarly situated white panelist, M.F. also equivocated as to whether he could follow the jury's instructions when he testified he would use "[t]he court way, and also go through [his] own process." The court ruled: "I don't think [M.F.] was in the same category, but thank you."

The State argues that D.W. was distinguishable from M.F. because D.W. clearly indicated he would not follow the court's instructions, by asserting: "If it's something that's outside of what the law of God says I couldn't follow it," and later reiterating, "I wouldn't follow it just because it's the law. I wouldn't." The State argues these statements are distinguishable from M.F. who, when pressed by defense counsel, acknowledged that if he reached inconsistent outcomes after following the court's instructions and his "own process" he would "go with what the judge said" rather than his

13

own "way." We agree that M.F.'s statements are distinguishable from D.W.'s. Furthermore, the trial court was in the best position to evaluate the demeanor and credibility of the venire members and the prosecutor, including M.F. and D.W. See Antwine, 743 S.W.2d at 67. Thus, after evaluating all the facts and circumstances, including the credibility of the venireperson's and the prosecutor, the court determined the State's proffered reason for striking D.W. was not pretextual. We do not find this determination clearly erroneous. Accordingly, the trial court did not err in overruling Defendant's Batson challenge. Point denied.

In Defendant's third point, he contends the court erred in overruling counsel's objection to jury instructions 5 and 6, the verdict directors for robbery, because the instructions allowed the jury to convict him without unanimously agreeing to his guilt. Specifically, Defendant alleges the jury heard evidence that Defendant committed multiple robberies on the night of February 2, 2011, yet the verdict directors failed to clearly include "the time" and "actual address" for the robbery the State charged him with committing, and this resulted in prejudice because the jury could have reached a unanimous verdict that he had committed a robbery, without unanimously agreeing on any one robbery. We disagree.

Defendant relies on State v. Celis-Garcia, 344 S.W.3d 150 (Mo. banc 2011), and State v. Lesieur, 361 S.W.3d 458 (Mo. App. W.D. 2012), to argue the jury verdict was not unanimous, but these cases are inapposite. Both Celis-Garcia and Lesieur involved defendants charged with committing multiple criminal acts, similar in nature, against the same victim, but their verdict directors failed to clearly distinguish between the various acts charged. See Celis-Garcia, 344 S.W.3d at 156; Lesieur, 361 S.W.3d at 462. Here,

14

Defendant was charged with only one robbery and his verdict director referred to only one robbery. Thus, Defendant's case is not a "multiple acts" case, and the arguments presented in Celis-Garcia and Lesieur are inapplicable.[4]

Here, the State charged Defendant with "forcibly" stealing "a wallet owned by [Victim]" on February 2, 2011. At trial, Victim testified that Defendant and Woods took his wallet at gunpoint. No other alleged victims testified to other robberies. The court submitted to the jury verdict-directing instructions 5 and 6.[5] Jury instruction 6, the verdict director for robbery in the first degree with respect to Defendant, was modeled after MAI-CR3d 323.02 and 304.04, and provided:

> A person is responsible for his own conduct and he is also responsible for the conduct of another person in committing an offense if he acts with the other person with the common purpose of committing that offense or if, for the purpose of committing that offense, he aids or encourages the other person in committing it.
>
> As to Count I, if you find and believe from the evidence beyond a reasonable doubt:
>
> First, that on or about February 2, 2011, in the City of St. Louis, State of Missouri, the defendant Kevin Murray took a wallet, which was property owned by [Victim], and
>
> Second, that the defendant Kevin Murray did so for the purpose of withholding it from the owner permanently, and
>
> Third, that Shyrus Woods threatened the immediate use of physical force on or against [Victim] for the purpose of preventing resistance to the taking of the property, and

---

[4] To preserve a defendant's right to a unanimous jury verdict in a case involving multiple criminal acts, the State is required to either elect "the particular criminal act on which it will rely to support the charge" or the verdict director must specifically describe "the separate criminal acts presented to the jury," with the jury instructed that it must unanimously agree that at least one of those acts occurred. State v. Edwards, 365 S.W.3d 240, 247 (Mo. App. W.D. 2012); Celis-Garcia, 344 S.W.3d at 157.

[5] Although Defendant argues both jury instructions 5 and 6 were misleading, only jury instruction 6 was directed toward Defendant. Jury instruction 5, although substantially similar, was directed towards his accomplice Woods.

Fourth, that in the course of taking the property, Shyrus Woods displayed or threatened the use of what appeared to be a deadly weapon or dangerous instrument,

Then you are instructed that the offense of robbery in the first degree has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Fifth, that with the purpose of promoting or furthering the commission of that robbery in the first degree, the defendant Kevin Murray acted together with Shyrus Woods in committing the offense, then you will find the defendant Kevin Murray guilty under Count I of robbery in the first degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant Kevin Murray not guilty of that offense.

Defendant argues this verdict director created an ambiguity because the State introduced evidence of multiple robberies at trial. At trial the State called Alana Estes, an acquaintance of Defendant and Woods who rode along with them on the night that J.W. was robbed. The State introduced Ms. Estes's deposition testimony that on February 2, 2011, Defendant talked about "hitting licks, or committing robberies" to buy drugs that night.[6] The State also introduced evidence that she testified by deposition that the car stopped "five or six times" that night and Defendant and Woods exited the vehicle, but her testimony was vague as to details, and she testified that on that night she had been under the influence of drugs, and, therefore, impaired. Even if we assume Ms. Estes's testimony could be considered evidence of other robberies, Defendant's argument is without merit because it overlooks the fact that the State only charged Defendant with committing one robbery, and the verdict director only referenced one robbery.

If this case is analogous to a multiple acts case at all, it would be more analogous to State v. Edwards, 365 S.W.3d 240 (Mo. App. W.D. 2012), than the cases identified by

_____

[6] At trial, Ms. Estes denied making these statements, and also claimed they were coerced by police.

Defendant. <u>Edwards</u> involved evidence of "multiple, distinct criminal acts of sodomy, each of which could have served as the basis for a criminal charge." <u>Id.</u> at 247. However, the verdict director in <u>Edwards</u> clearly excluded all but one incident. <u>Id.</u> at 247-249. Because of the verdict director's exclusion of all but one incident, the appellate court in <u>Edwards</u> found no violation of the defendant's right to a unanimous jury verdict. <u>Id.</u> at 247 (finding <u>Celis-Garcia</u> distinguishable). Similarly, here, instruction 6 specified a single act of robbery committed by Defendant involving J.W. on the night of February 2, 2011. Thus, the verdict director excluded all but one incident and there was no ambiguity. See <u>Edwards</u>, 365 S.W.3d at 247-249. Accordingly, instruction 6 did not violate Defendant's right to a unanimous jury verdict and the trial court did not err in overruling Defendant's objections to the jury instructions. Point denied.

CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
Lisa S. Van Amburg, Presiding Judge

Patricia L. Cohen, Judge, and
Philip M. Hess, Judge concur.

17