

# In the Missouri Court of Appeals
# Eastern District

DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI | ) | No. ED108021 |
| | ) | |
| Plaintiff/Respondent, | ) | Appeal from the Circuit Court |
| | ) | of Washington County |
| v. | ) | |
| | ) | |
| GRAY WAYNE BRAMMER, | ) | Honorable Wendy Wexler Horn |
| | ) | |
| Defendant/Appellant. | ) | Filed: September 15, 2020 |

Introduction

Gray Wayne Brammer (Appellant) appeals from the judgment of the trial court entered after a jury found him guilty of child molestation in the first degree.[1] We affirm.

Factual and Procedural Background

Appellant does not contest the sufficiency of the evidence to support his conviction. Viewed in the light most favorable to the verdict, the facts at trial showed the following:

S.M. (Victim) was 12 years old at the time of the offense and lived with her grandmother. Victim's mother (Mother) lived with her boyfriend and Appellant, both registered sex offenders, in a trailer.

On February 4, 2017, Victim visited Mother at the trailer. Appellant was also present. During the day, Appellant and Victim went for a four-wheeler ride to pick up cigarettes, snacks,

---

[1] Appellant was acquitted of statutory sodomy in the first degree.

and alcohol from the store. Appellant had been told not to go on the four-wheeler with Victim and Victim went without permission from Mother. Victim drove and Appellant sat directly behind her. While driving to the store, Appellant reached up and grabbed Victim's right breast. Victim initially thought the touching may have been an accident, but Appellant kept his hand on her breast and made no attempt to reach the controls. Victim testified the contact occurred on a straight section of a flat, dirt path. Victim and Appellant returned from the store without further incident.

Appellant returned to the trailer and Victim continued to drive the four-wheeler. Victim did not mention the incident to Mother. Later, Appellant joined Victim on the four-wheeler and they rode up a hill. Eventually, Victim went inside to see that Appellant and Mother were drinking and Mother was intoxicated. Victim, Mother, and Appellant all sat at the kitchen table and Appellant repeatedly attempted to give Victim wine. Ultimately, Victim tried a little wine but spit it out. At the kitchen table, Appellant began touching Victim's thigh and making her uncomfortable. Victim tried to leave the table but Appellant held her. Finally, Mother told Appellant to stop and he did. Victim then contacted a relative because she was uncomfortable. In the end, Mother's boyfriend left work early and took her home.

Victim told her grandmother that Appellant had touched her "boob." Although Victim asked her grandmother to not tell anyone, her grandmother contacted the authorities. Victim was interviewed at a Child Advocacy Center (CAC) on February 17, 2017. During this interview, Victim confirmed Appellant touched her breast while they rode the four-wheeler on a flat surface.

On February 23, 2017, Appellant was interviewed at his home by a Children's Division worker, a detective, and an officer. During this interview, Appellant admitted to having

potentially "brushed" against Victim's breast while reaching to give the four-wheeler gas as they drove up a hill.[2] Appellant denied any allegations of touching Victim at the kitchen table, stating he did not remember the group sitting at the table that evening.

As a result of the events on February 4, 2017, Appellant was charged with statutory sodomy in the first degree and child molestation in the first degree.

Appellant sought to exclude evidence of his prior convictions. In 1992, Appellant was convicted of first-degree statutory rape, first-degree sexual assault, and first-degree deviate sexual assault as a result of his relationship with his then 14-year-old step-niece. Appellant served 13 years in prison for his crimes. Appellant argued his certified prior convictions should not be introduced because their probative value was substantially outweighed by their prejudice. In support, Appellant noted the prior acts occurred more than 25 years ago, involved a relationship with a family member as opposed to a stranger, and had the potential to eclipse the current charges. The State countered Appellant's argument by emphasizing the similarity of the crimes and noting the current and prior victims were both females of similar age. The trial court agreed with the State, focusing on both the similarity of the crimes and the fact that the past crimes led to actual convictions. In the end, a stipulation providing the offense, date, and a brief description of the act was read to the jury.

At trial, the jury heard testimony from Victim; Mother; Ashlee Gamble, an investigative supervisor with the Children's Division (Gamble); Kelly Teeson, a forensic interviewer with the CAC (Teeson); and Detective Beverly Gilliam (Det. Gilliam). Gamble recounted the events surrounding the CAC interview with Victim. Gamble also testified to Victim's disclosure of Appellant's touching her breast while on the four-wheeler and rubbing her leg at the kitchen

---

[2] Appellant brought up the four-wheeler ride with Victim before the officers had mentioned anything about the four-wheeler and where the alleged abuse took place.

3

table. Victim testified about Appellant's touching her breast while on the four-wheeler and his touching her leg and vagina while at the dinner table. Additionally, Victim's CAC interview was played for the jury during the examination of Teeson. In the CAC interview, Victim also stated Appellant touched her breast while on the four-wheeler. Det. Gilliam testified in relation to her interview with Appellant at the trailer. Det. Gilliam testified that Appellant stated he may have brushed against Victim's breast while riding the four-wheeler, but he did not remember them all sitting down at the kitchen table. The jury also viewed a videotape of Det. Gilliam's interview of Appellant at the trailer, which stated the same. Finally, during Appellant's direct examination of Mother, she testified Victim relayed the touching of Victim's breast occurred while Victim and Appellant were riding the four-wheeler up a hill.

During the instruction conference, Appellant objected to Instruction No. 10, which addressed propensity evidence based on Appellant's prior criminal acts. No objection was raised to Instruction No. 7, the verdict director for Count II. Instruction No. 7 stated:

> As to Count II, if you find and believe from the evidence beyond a reasonable doubt:
>
> First, that on or about February 04, 2017, in the County of Washington, State of Missouri, the defendant touched the breast of S.E.M. through the clothing, and
>
> Second, that the defendant did so for the purpose of arousing defendant's sexual desire,
>
> Third, that S.E.M. was a child less than fourteen years of age,
>
> Fourth, that in the course of this conduct, the defendant had previously been found guilty of an offense under chapter 566,
>
> then you will find the defendant guilty under Count II of child molestation in the first degree.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

After deliberating, the jury found Appellant not guilty of Count I, statutory sodomy in the first degree, and guilty of Count II, child molestation in the first degree. Appellant was sentenced to 30 years in prison. This appeal follows.

## Points Relied On

Appellant makes two claims of error on this appeal. Point I claims the trial court plainly erred in submitting Instruction No. 7 to the jury because the instruction failed to specify a particular incident of child molestation in the first degree. Point II claims the trial court abused its discretion by allowing the State to introduce evidence of Appellant's prior convictions because that evidence was substantially more prejudicial than probative.

## Point I

### *Standard of Review*

Appellant did not object to Instruction No. 7 and he concedes his claim was not properly preserved for appellate review.[3] Therefore, Appellant requests we review Instruction No. 7 for plain error. "Any issue that was not preserved can only be reviewed for plain error, which requires a finding that manifest injustice or a miscarriage of justice has resulted from trial court error." State v. Severe, 307 S.W.3d 640, 642 (Mo. banc 2010). Significantly, "[a] claim of plain error places a much greater burden on a defendant than an assertion of prejudicial error." State v. Dean, 382 S.W.3d 218, 224 (Mo. App. S.D. 2012).

Plain error review is a two-step process. State v. Baumruk, 280 S.W.3d 600, 607 (Mo. banc 2009). First, the reviewing court determines whether the claimed error affects Appellant's

---

[3] Contrary to the State's position, Appellant did not waive plain error review by failing to object to a faulty jury instruction. State v. Celis-Garcia, 344 S.W.3d 150, 154, n. 3 (Mo. banc 2011).

5

substantive rights in a way that is evident, obvious, and clear. State v. Myles, 479 S.W.3d 649, 655 (Mo. App. E.D. 2015). Instructional error rises to the level of plain error "when it is apparent the error affected the verdict." State v. Hunt, 451 S.W.3d 251, 260 (Mo. banc 2014). Second, "if plain error affecting substantial rights is found, the Court determines whether the error actually did result in manifest injustice or a miscarriage of justice." Id.

*Discussion*

Appellant argues this case falls under the umbrella of Celis-Garcia because evidence was presented of three potential acts. State v. Celis-Garcia, 344 S.W.3d 150 (Mo. banc 2011). Specifically, there was evidence that Appellant touched Victim's breast: (1) while riding a four-wheeler together on a straightaway path, (2) while riding a four-wheeler together up a hill, and (3) while at the kitchen table. Therefore, although Appellant never argued the verdict director needed to distinguish between locations because multiple acts may have occurred, Appellant now claims that because Instruction No. 7 did not distinguish between the three possible events, some jury members may have based their findings of guilt on one event while others may have based it on another.

As the Supreme Court of Missouri explained in Celis-Garcia, "[a] multiple acts case arises when there is evidence of multiple, distinct criminal acts, each of which could serve as the basis for a criminal charge, but the defendant is charged with those acts in a single count." Id. at 155-56. Significantly, criminal defendants in Missouri are guaranteed the right to a unanimous jury verdict under the Missouri Constitution. MO. CONST. art. I, § 22(a); Celis-Garcia, 344 S.W.3d at 155. Cases involving multiple acts threaten this right because "the possibility exists that jurors follow the trial court's instructions, yet individually choose differing instances of the

6

crime on which they base the conviction." State v. Henry, 568 S.W.3d 464, 470 (Mo. App. E.D. 2019), citing State v. Watson, 407 S.W.3d 180, 184 (Mo. App. E.D. 2013).

In Celis-Garcia, the defendant was charged with one count of statutory sodomy against her daughter, CJ, and one count against her daughter, KJ. 344 S.W.3d at 152. At trial, evidence was introduced of "at least seven separate acts of statutory sodomy that occurred at different times (some more than three days apart) and in different locations." Id. at 156. Crucially, the verdict directors for both victims extended over a period of several months and did not specify the incident or incidents the jury was to agree the defendant committed. Id. at 154. Due to this defect, the Supreme Court of Missouri held "it [was] impossible to determine whether the jury unanimously agreed on any one of these separate incidents [and, as a result], the verdict directors violated [the defendant's] constitutional right to a unanimous jury under article I, section 22(a) of the Missouri Constitution." Id. at 158. The court then looked to see whether the trial court's error resulted in manifest injustice or a miscarriage of justice, so as to warrant reversal under plain error review. Id. The court answered in the affirmative, emphasizing the defendant did not generally deny the allegations and instead "sought to exploit factual inconsistencies and raise doubts about the plausibility of the specific incidents of statutory sodomy alleged by her daughters." Id. Due to the defendant's individualized trial strategy, the court considered it more likely that "individual jurors convicted her on the basis of different acts." Id. at 159.

This case is easily distinguishable from traditional multiple acts cases such as Celis-Garcia. Here, "multiple, distinct criminal acts" were not being charged in a single count. Id. at 156-57. Instead, the evidence highlights a disagreement about where and when a single criminal act occurred. Moreover, unlike in Celis-Garcia, here the verdict director stated the incident the

7

jury must agree upon with specificity—whether the defendant touched the Victim's breast through her clothing on February 4, 2017. Id. at 156.

The Western District addressed a similar scenario in State v. Brown, 596 S.W.3d 193 (Mo. App. W.D. 2020). In Brown, the defendant was charged with first-degree statutory sodomy. At trial, the victim stated the defendant "humped her in the bum" in the garage and did not ejaculate. However, while discussing the same event during her Child Safe interview, the victim told her interviewer the defendant "cummed all over the place." Id. at 203. Emphasizing the victim's inconsistent statements, the defendant argued that the State presented evidence of two distinct acts of sodomy while failing to distinguish between the events in the verdict director. Id. at 202. The court rejected the defendant's argument, holding "[t]he inconsistency in this detail 'does not suggest that the State introduced evidence as to two 'distinct criminal acts' of penis-to-anus contact, particularly in light of [the victim's] testimony at trial that this act occurred only one time in the garage." Id. at 203. See also State v. Rycraw, 507 S.W.3d 47, 64-65 (Mo. App. E.D. 2016) ("To the extent that Victim's characterization or description of the act in the CAC interview was inconsistent or conflicting with her testimony at trial, the jury was entitled to reject Victim's testimony."). The Brown court explained the "evidence was – at best – ambiguous as to whether multiple acts occurred, or instead whether [the victim] had simply described a single act in somewhat different ways at different times." 596 S.W.3d at 203. Finally, the court also reasoned that "a circuit court runs a real risk of confusing jurors if it instructs them that multiple acts have in fact occurred, and that they must choose among those multiple acts in order to convict the defendant." Id.

Like in Brown, here the evidence is "at best – ambiguous as to whether multiple acts occurred" and we find it likely that the discrepancies over where the touching occurred can be

8

boiled down to Victim having "described a single act in somewhat different ways at different times." Brown, 596 S.W.3d at 203. Inconsistent descriptions go to a witness's credibility. Id. at 205. It is a jury's role to determine credibility, resolve conflicts in testimony, and weigh evidence. State v. Williams, 313 S.W.3d 656, 660 (Mo. banc 2010). Here, Victim, Appellant, and Mother were all consistent in stating that only one touching of Victim's breast had occurred. Similar to in Brown, at trial Victim was consistent in explaining that the touching occurred only once while on the four-wheeler.[4] Necessarily, the jury found Victim's version of the event more believable than Appellant's. That alone does not elevate a dispute about an event's location into a multiple acts case. If a defendant could lodge a multiple acts appeal anytime a victim or witness was inconsistent in describing an event or its location, this would likely expand the scope of multiple acts appeals far beyond the holding in Celis-Garcia.

Finally, in State v. Murray, 428 S.W.3d 705 (Mo. App. E.D. 2014), a jury found the defendant guilty of robbery. On appeal, the defendant argued that his case involved multiple acts because the State introduced evidence of additional robberies. Id. at 716. Specifically, the State introduced deposition testimony of a witness who was in the defendant's car on the night of the robbery. The witness testified the car stopped "five or six times" and the defendant talked about "committing robberies" to buy drugs that night. Id. Relying on that evidence, the defendant argued the verdict director created ambiguity by not distinguishing between robberies. However, this Court disagreed, stating the defendant "was charged with only one robbery and his verdict director referred to only one robbery. Thus, Defendant's case is not a 'multiple acts' case, and the arguments presented in Celis–Garcia and LeSieur are inapplicable." Id. at 715.[5] Likewise,

---

[4] While Victim previously stated that all abuse occurred in the kitchen, it is unclear if Victim's statement was only referencing the touching of Victim's thigh.
[5] Murray also references State v. Edwards, 365 S.W.3d 240 (Mo. App. W.D. 2012), for support. While Edwards involved multiple criminal acts, the verdict direct solely focused on penile to anal contact. The court found this

9

Appellant was only charged with once touching Victim's breast and the verdict director reflects that.

For all the above reasons, the trial court did not err in instructing the jury. The evidence does not reflect multiple criminal acts being charged in a single count. Rather, the evidence reflects a conflict as to where and when a single, criminal act occurred.

Moreover, even if the trial court erred, Appellant needed to do more than merely demonstrate trial court error to prevail under plain error review. Appellant needed to demonstrate the instructional error actually affected the verdict. "[U]nder plain error review, [Appellant] must also show the trial court's error resulted in manifest injustice, or a miscarriage of justice, thereby warranting reversal." State v. Escobar, 523 S.W.3d 545, 551 (Mo. App. W.D. 2017).

In Celis-Garcia, the Missouri Supreme Court found prejudice more likely when the defendant challenged "evidentiary inconsistencies and factual improbabilities respecting each specific allegation." 344 S.W.3d at 159. The court explained that compared to a general denial, an individualized defense tactic was more likely to result in individual jurors convicting on the basis of different acts. Id. at 158-59. Here, Appellant did not have different factual rebuttals for each possible touching, and instead generally claimed that the touching, if it occurred at all, was accidental. Thus, unlike in Celis-Garcia, Appellant consistently argued Victim's allegation of purposeful touching had been fabricated.

Additionally, when a defendant has admitted touching the victim but denied criminal (sexual) intent, potential multiple acts may be less likely to mislead the jury. In State v. Stuckley, 573 S.W.3d 766 (Mo. App. S.D. 2019), the appellant argued a brief statement heard by the jury

significant, noting that the victim never contradicted her testimony that penile to anal contact happened only one time. In its holding, the court stated, "Because there was no evidence of multiple acts of penile to anal contact, further instruction regarding unanimity on specific acts was unnecessary." Edwards, 365 S.W.3d at 249.

which mentioned a potential second touching incident supported the notion that the jury may have convicted on multiple acts. The court ultimately found such a minor admission unlikely to constitute evident, obvious and clear error. Significantly, the Southern District noted no manifest injustice occurred because the appellant generally denied all sexual intent while admitting to the touchings and penetrations. "Given that defense, Stuckley fails to explain why Instruction 6 needed to be more act-specific or so misdirected the jury as to affect the verdict." Stuckley, 573 S.W.3d at 771. Like in Stuckley, Appellant has admitted to the touching and instead focused on denying sexual intent. In other words, the primary concern was mens rea, not actus reus. Id. Therefore, in finding Appellant guilty, the jury necessarily found Defendant touched Victim's breast to arouse his sexual desire.

Thus, even if the trial court did err, the instructional error does not amount to plain error. Appellant has not met his burden and demonstrated manifest injustice or a miscarriage of justice entitling him to relief. State v. Ralston, 400 S.W.3d 511, 521 (Mo. App. S.D. 2013). Point I is denied.

## Point II

### *Standard of Review*

At trial, Appellant repeatedly objected to the introduction of evidence of his prior convictions for statutory rape, sexual assault, and deviate sexual assault. As such, this issue has been properly preserved for appellate review.

We review a trial court's decision to admit or deny evidence for abuse of discretion. State v. Williams, 548 S.W.3d 275, 287 (Mo. banc 2018). "The circuit court's evidentiary ruling 'will not be disturbed unless it is clearly against the logic of the circumstances.'" Id. (quoting State v. Prince, 534 S.W.3d 813, 818 (Mo. banc 2017)). Moreover, "this Court reviews the [circuit] court

11

for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial." Id.

*Discussion*

Appellant contends the trial court erred in introducing his prior convictions, resulting in prejudice. Appellant emphasizes his prior convictions occurred over 25 years ago and resulted from different circumstances. However, Appellant's claim fails for several reasons.

The Missouri Constitution was amended in 2014 to reflect the longstanding "practice of admitting evidence of the defendant's prior sexual misconduct for purposes of proving the defendant's propensity to commit the sex offense with which he was charged." State v. Williams, 548 S.W.3d 275, 281 (Mo. banc 2018). The amendment states:

> Notwithstanding the provisions of sections 17 and 18(a) of this article to the contrary, in prosecutions for crimes of a sexual nature involving a victim under eighteen years of age, relevant evidence of prior criminal acts, whether charged or uncharged, is admissible for the purpose of corroborating the victim's testimony or demonstrating the defendant's propensity to commit the crime with which he or she is presently charged. The court may exclude relevant evidence of prior criminal acts if the probative value of the evidence is substantially outweighed by the danger of unfair prejudice.

MO. CONST. art. I, § 18(c).

In Williams, the Missouri Supreme Court emphasized that the factors to be considered in determining probative value and the weight given to them will vary from case to case. 548 S.W.3d at 288. Therefore, while Appellant accurately recites the factors listed in Williams, we reiterate that the "factors are not elements." State v. Burge, 596 S.W.3d 657, 664 (Mo. App. S.D. 2020). Moreover, addressing Appellant's claims below, we hold the probative value of the propensity evidence was not substantially outweighed by the danger of unfair prejudice.

First, as the trial court noted, Appellant's past crimes resulted in actual convictions such that "it [was] sufficient for the jury to conclude the defendant actually committed the prior

12

crime." Williams, 548 S.W.3d at 288. Additionally, when a past crime is substantially similar to the charged crime, "an inference of propensity might be proper notwithstanding a significant lapse between the prior crime and the charged crime." Id. at 289. Here, contrary to Appellant's assertions, Appellant's past crimes were substantially similar to the current charges. Both involved young female victims, similar body parts, and similar accusations. Although there was a sizeable amount of time between the past crime and current charges, the evidence was highly probative of Appellant's tendency to commit these types of child-sex crimes. Additionally, the introduction of Appellant's past crimes was limited to a stipulation read to the jury. No specific details were introduced and no victims testified, limiting any potential prejudice.

Appellant also claims the State had other forms of evidence available and the State's failure to use those means did not create a need for the admission of propensity evidence. This analysis misinterprets Williams, which states "prior acts evidence need not be absolutely necessary to the prosecution's case in order to be introduced, it must simply be helpful or practically necessary." 548 S.W.3d at 289. Additionally, as discussed below, the State has established several other uses for the evidence which render it practically necessary.

Evidence of prior convictions "may be admitted for purposes other than to establish the defendant's propensities to commit the charged offense." State v. Lutes, 557 S.W.3d 384, 390 (Mo. App. W.D. 2018); see also State v. Primm, 347 S.W.3d 66, 70-71 (Mo. banc 2011). Examples of such purposes include establishing motive, intent, absence of mistake or accidence, identity, or a common scheme. Lutes, 557 S.W.3d at 390. In this case, the State used the evidence to establish motive and counter Appellant's claim that the contact was accidental. Thus, the State had another valid purpose for introducing evidence of Appellant's past crimes.

Finally, an element of the offense of child molestation in the first degree is that the offense is an aggravated sexual offense. § 566.067, RSMo (2017). One way an offense is considered aggravated under Section 566.010 is when the actor "had previously been found guilty of an offense under this chapter." § 566.010(1)(d). Appellant's crimes meet this requirement. Thus, evidence of Appellant's prior convictions was necessary to establish the aggravated element of first-degree child molestation.

Therefore, in light of the foregoing, the trial court did not abuse its broad discretion in allowing evidence of Appellant's past convictions. Point II is denied.

<u>Conclusion</u>

The judgment of the trial court is affirmed.

_____
SHERRI B. SULLIVAN, J.

Robin Ransom, P.J., and
Lisa P. Page, J., concur.

14