**STATE of Missouri, Respondent,**

v.

**Larry JORDAN, Appellant.**

**No. ED 84583.**

Missouri Court of Appeals,
Eastern District,
Division Two.

Dec. 20, 2005.

---

1. All further statutory references are to RSMo (2000) unless otherwise indicated.

Craig A. Johnston, Columbia, MO, for appellant.

Deborah Daniels, Evan J. Buchheim, Jefferson City, MO, for respondent.

GEORGE W. DRAPER III, Judge.

Larry Jordan (hereinafter, "Defendant") appeals from the trial court's judgment after a jury found him guilty of: assaulting a law enforcement officer in the third degree, Section 565.083 RSMo (2000);[1] assaulting a law enforcement officer in the second degree, Section 565.082; armed criminal action, Section 571.105; felony resisting arrest, Section 575.150; felony driving while intoxicated, Section 577.010; and driving while revoked, Section 302.321.

Defendant was sentenced to a total of fifteen years' imprisonment.

Defendant raises two points on appeal. First, Defendant argues the trial court erred in overruling his motion for judgment of acquittal at the close of all of the evidence because he alleges there was insufficient evidence to convict him of felony resisting arrest. Second, Defendant argues the trial court abused its discretion in overruling his objection and allowing the State to introduce the blood alcohol content when the State failed to lay a proper foundation for the results. We affirm in part, reverse in part.

Viewing the evidence in the light most favorable to the jury's verdict, the facts are as follows: On June 1, 2002, Officer Steven Wooten (hereinafter, "Officer Wooten") was working secondary employment as a security officer directing traffic for a large church festival in Bridgeton, Missouri. Officer Wooten observed a Cadillac heading north in the southbound lane of Fee Fee Road. As the Cadillac approached the intersection where Officer Wooten was directing traffic, he noticed the vehicle did not have brake lights or a license plate. Officer Wooten raised his hands and motioned the driver to slow down. The Cadillac slowed down as it passed Officer Wooten and came to a stop behind another vehicle at the stoplight. After receiving complaints from other motorists about the driving of the Cadillac, Officer Wooten approached the vehicle.

Upon reaching the Cadillac, Officer Wooten instructed the driver, Defendant, not to move the vehicle when the stoplight turned green. Defendant questioned Officer Wooten's reasons for wanting to see his driver's license. Expressing his disagreement, Defendant cursed, at which point Officer Wooten reached into the car

---

1. All statutory references are to RSMo (2000) unless otherwise indicated.

in an attempt to find the car keys in order to turn off the ignition. The steering column had been pried open, so Officer Wooten tried to reach the gear selector to put the Cadillac into park. At this point, Defendant turned the steering wheel and began accelerating, thereby catching Officer Wooten's arm inside the car. As soon as Officer Wooten was able to extract his arm, Defendant turned the car away, hitting Officer Wooten in the right knee and driving off.

Officer Wooten radioed for assistance, stating he was struck by the Cadillac which was traveling northbound on Fee Fee Road and providing a description of Defendant. Officer Daniel O'Connor (hereinafter, "Officer O'Connor"), Officer Brian Pulling (hereinafter, "Officer Pulling"), and Officer Jimmy Livingston (hereinafter, "Officer Livingston") responded to the call in separate marked police vehicles with their lights and sirens activated. These officers attempted to stop Defendant several times while Defendant led the officers on a chase through a residential neighborhood, which resulted in Defendant ramming Officer O'Connor's vehicle.

After the collision, Officer O'Connor and Officer Livingston exited their vehicle and approached the Cadillac. The engine was racing and the wheels continued spinning. Defendant was belligerent, yelling, and cursing at the officers, threatening to kill them. Officer Livingston walked up to the driver's side door in an attempt to "get [Defendant] under control." Defendant was ordered to stop accelerating the vehicle, but he refused to do so. Officer Livingston reached in to turn off the vehicle, and Defendant grabbed him by the arm and attempted to pull him into the vehicle. An altercation ensued, and Officer Livingston struck Defendant several times. Ulti-

mately, Defendant was removed from the vehicle and arrested.

Defendant's speech was slurred, there was a strong odor of alcohol on his breath, and he continued to be belligerent by continuing to curse and yell at the officers. Officer Pulling found bottles of alcohol and beer in the vehicle, some of which had been consumed. Later, after Defendant was taken to the hospital, Officer Pulling requested that blood be drawn for testing.

Defendant was charged initially with two counts of assaulting a law enforcement officer in the first degree, two counts of armed criminal action, one count of felony resisting arrest, one count of driving while intoxicated, and one count of driving while revoked. The indictment was amended later to reduce one of the assaults of a law enforcement officer in the first degree to a second degree offense. Defendant filed motions to suppress the blood alcohol content evidence and statements made during the course of the incident. These motions were denied.

After a jury trial, Defendant was found guilty of one count of assault of a law enforcement officer in the third degree, assault of a law enforcement officer in the second degree, one count of armed criminal action, one count of felony resisting arrest, one count of driving while intoxicated, and one count of driving while revoked. As a prior and persistent offender, Defendant was sentenced to a total of fifteen years' imprisonment. Defendant appeals.

■ In his first point on appeal, Defendant argues the trial court erred in overruling his motion for judgment of acquittal at the close of the State's case for felony resisting arrest. Defendant argues there was insufficient evidence presented that Officer Livingston intended to arrest him for assaulting a law enforcement officer in

**592**

the first degree, a class A felony.,[2] Therefore, the jury could not find beyond a reasonable doubt that he was guilty of felony resisting arrest.

We limit our review of a challenge to the sufficiency of the evidence supporting a criminal conviction to a determination of whether sufficient evidence was presented from which a reasonable juror could find the defendant guilty beyond a reasonable doubt. *State v. Grim*, 854 S.W.2d 403, 405 (Mo. banc 1993). For this review, we consider the evidence and all reasonable inferences drawn therefrom in the light most favorable to the jury's verdict, and disregard all contrary evidence and inferences. *Id.* While reasonable inferences may be drawn from direct and circumstantial evidence, "the inferences must be logical, reasonable and drawn from established fact." *State v. Presberry*, 128 S.W.3d 80, 91 (Mo. App.E.D.2003). "In considering the sufficiency of the evidence, there must be sufficient evidence of each element of the offense." *State v. Dixon*, 70 S.W.3d 540, 544 (Mo.App. W.D.2002).

The State has the burden to prove each and every element of a criminal case. *State v. Taylor*, 126 S.W.3d 2, 4 (Mo.App. E.D.2003). If the State fails to produce sufficient evidence to sustain a conviction, we must reverse the trial court's judgment. *State v. West*, 21 S.W.3d 59, 61 (Mo.App. W.D.2000).

The three elements of resisting arrest are: (1) knowledge that a law enforcement officer is making an arrest; (2) purpose on the part of the defendant to prevent the officer from effecting the arrest; and (3) resisting the arrest by use or threat of violence of physical force. *State*

*v. Larner*, 844 S.W.2d 490, 492 (Mo.App. E.D.1992); Section 575.150. "[R]esisting arrest is a felony offense only if the underlying offense is a felony and the resistance is accomplished by a means other than flight." *DeClue v. State*, 3 S.W.3d 395, 397 (Mo.App. E.D.1999)(*quoting State v. Furne*, 642 S.W.2d 614, 616 (Mo. banc 1982)). The relevant inquiry is not whether the defendant is guilty of the charge for which he or she was arrested, but whether the arresting officer contemplated making a felony arrest. *State v. Merritt*, 805 S.W.2d 337, 339 (Mo.App. E.D.1991).

The State focuses on the collective testimony of the officers involved to show the reasonable inference from all of the evidence was that Officer Livingston contemplated arresting Defendant for a felony. This Court recently addressed a similar situation. In *State v. Brooks*, 158 S.W.3d 841 (Mo.App. E.D.2005), there was more than one police officer involved in the apprehension and arrest of the defendant. This Court stated:

> Before we begin our analysis, it should be made clear that [Brooks] was charged with resisting arrest by Officer Farrow, the officer who followed the suspect truck. He was not charged with resisting arrest by Officer Siebum, the officer who found him in the shed. Arguments made by the parties regarding [Brooks'] encounter with Officer Siebum are misplaced and are not material to whether [Brooks] resisted arrest by Officer Farrow. It follows that any facts pertaining to [Brooks'] encounter with Officer Siebum are immaterial to our review.

*Id.* at 851.

---

**2.** Section 568.081.1 states "a person commits the crime of assault of a law enforcement officer in the first degree if he [or she] attempts to kill or knowingly causes or attempts to cause serious physical injury to a law enforcement officer." Further, Section 568.081.2 designates assault of a law enforcement officer in the first degree as a class A felony.

Likewise, we find any arguments made with respect to Officer O'Connor's encounter with Defendant are immaterial to our review here. Even assuming *arguendo* we were to consider Officer O'Connor's testimony at trial, to wit: "He struck an officer. We were planning on arresting him for the charges, evading my red lights, and siren" this evidence would only establish resisting arrest by flight which does not constitute felony resisting arrest. *Cf.* Section 575.150.

At trial, Officer Livingston testified that when he approached Defendant after the chase, his intention was to "bring him under control ... and stop the vehicle." At no point in Officer Livingston's testimony did he indicate contemplating arresting Defendant or that he intended to arrest Defendant for a felony. Since there were a variety of charges for which Defendant could have been arrested, we cannot say the evidence established a basis for a felony arrest beyond a reasonable doubt. *See State v. Bell,* 30 S.W.3d 206, 208 (Mo.App. S.D.2000). Moreover, "[i]t would have been simple for the State to show what the officer was arresting [Defendant] for [at that moment]. Failing to show this, when it could have been easily established, casts doubt upon the State's contentions." *Id.* Therefore, we find there was insufficient evidence to convict Defendant for felony resisting arrest. Point granted.

■ In his second point on appeal, Defendant argues the trial court abused its discretion in admitting evidence of his blood alcohol content over his objection at trial. Defendant argues the State failed to lay a proper foundation for admission of the test results because it failed to prove that the blood drawn from Defendant was done so by a previously unused and sterile needle and sterile container as required by Section 577.029.

Defendant filed a general motion to suppress seeking to exclude all evidence seized from him after his arrest, which included the blood drawn from him at the hospital. A hearing on the motion was held during trial.

The trauma nurse who drew Defendant's blood at the hospital testified that when a police officer makes a request for her to draw blood, she would "prepare the patient's arm with a betadine solution, wipe it off with a dry piece of cotton, insert the needle, draw the blood. We hand it directly to the police officer after we label it in front of him and sign a chain of custody form." The nurse explained that she used a betadine swab "to make sure there is no question of carry over from an alcohol prep." There was no objection to this testimony. Defense counsel only asked one question on cross-examination regarding whether she gave the sample to Officer Pulling after drawing Defendant's blood.

Defense counsel did object, however, when a technician from the St. Louis County Medical Examiner's Office testified regarding Defendant's blood alcohol content. Defense counsel stated:

> I would renew my motion to suppress at this time for all of the reasons that have been previously stated including the fact that the State has not shown that the blood was withdrawn and in conformity with Missouri statutes and regulations, among other things, and previous testimony at the motion to suppress.

Defense counsel specifically argued the nurse did not follow Missouri statutes because "[s]he would have, at this point for sedation purposes, would have used an alcoholic substance, which obviously would taint any results of the blood test." Defense counsel also argued the State did not establish a proper chain of custody. The trial court overruled defense counsel's objections and allowed the technician to testify about the results of the blood test.

The trial court has broad discretion in admitting evidence, and its decisions will be affirmed on appeal absent an abuse of discretion. *State v. Moore*, 88 S.W.3d 31, 35 (Mo.App. E.D.2002). An abuse of discretion occurs when the trial court's ruling is clearly against the logic of the circumstances then before the court, and is so unreasonable and arbitrary that the ruling shocks the court's sense of justice, and indicates a lack of careful consideration. *State v. Anglin*, 45 S.W.3d 470, 472 (Mo. App. W.D.2001).

When using a blood test to prove blood alcohol content, the proponent of the test must meet all foundational prerequisites for its admission. *Clark v. Dir. of Revenue*, 132 S.W.3d 272, 276 (Mo.App. S.D.2004). "The required prerequisites are: (1) that the individual who took the blood sample was a licensed physician, registered nurse, or trained medical technician; (2) that a sterile needle was used; (3) that a sterile container was used; and (4) that a non-alcoholic antiseptic was used." *Id., citing* Section 577.029. Missouri courts have held that "absolute and literal compliance is necessary" with the requirements of Section 577.029. *State v. Setter*, 763 S.W.2d 228, 230 (Mo.App. W.D. 1988). These requirements "are clear and [are] not difficult to meet." *Id.*

"To preserve an objection to evidence for review, the objection must be specific, and the point raised on appeal must be based upon the same theory" presented at trial. *State v. Brethold*, 149 S.W.3d 906, 909 (Mo.App. E.D.2004)(*quoting State v. Driver*, 912 S.W.2d 52, 54 (Mo. banc 1995)). Moreover, when a defendant objects to the admission of evidence on the grounds that an inadequate foundation has been laid, it is "particularly important that the objection made be specific because foundation deficiencies can frequently be remedied." *Rathbun v. CATO Corp.*, 93 S.W.3d 771, 785 (Mo.App. S.D.2002). "Missouri courts strictly apply these principles based on the notion that trial judges should be given an opportunity to reconsider their prior rulings against the backdrop of the evidence actually adduced and in light of the circumstances that exist when the questioned evidence is actually proffered." *State v. McCullum*, 63 S.W.3d 242, 259 (Mo.App. S.D.2001).

While it can be argued Defendant made specific objections to the admission of the blood alcohol content because the trauma nurse used "an alcohol substance" and the chain of custody might have been compromised, he never objected to the evidence on the basis that the State failed to demonstrate the trauma nurse used a sterile needle and container when drawing his blood. The objection to the blood test results made by Defendant was not sufficiently clear and definite in this regard. Further, Defendant's motion for new trial merely states "the State failed to lay the proper foundation for admission of the blood test." There is no specific statement regarding the procedures used for withdrawing the blood or that the trauma nurse failed to use a sterile needle or container. Moreover, the argument regarding the failure to use a sterile needle or container is a new theory on appeal which was not presented to the trial court below.

Therefore, the argument that the State failed to lay a proper foundation for admission of the blood test results is not preserved for appeal. *Mayridis v. Dir. of Revenue*, 155 S.W.3d 775, 779 (Mo.App. E.D.2005). Point denied.

We reverse this case with respect to Point I only.

GARY M. GAERTNER, SR., P.J., concurs.

KENNETH M. ROMINES, J., concurs in separate opinion.

KENNETH M. ROMINES, Judge, concurring.

I concur with the Courts analysis in regard to the admission of the blood alcohol evidence.

I reluctantly concur with the Courts result as to the resisting arrest conviction.

Instruction No. 19, which is MAI–CR3d 329.60.2, was given to the Jury as Follows:

### Instruction No. 19

As to Count V, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about June 1, 2002, in the County of St. Louis, State of Missouri, James Livingston was a law enforcement officer, and

Second, that James Livingston was making an arrest of the defendant for assault of a law enforcement officer in the first degree, and

Third, that defendant knew or reasonably should have known that a law enforcement officer was making an arrest of defendant, and

Fourth, that for the purpose of preventing the law enforcement officer from making the arrest, the defendant resisted by using or threatening the use of violence or physical force, then you will find the defendant guilty under Count V of resisting arrest.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

MAI–CR3d 329.60.2

Submitted by the State

By this instruction the Jury had to believe beyond a reasonable doubt that James Livingston was making an arrest of defendant for assault of a law enforcement officer. The prosecutor failed in eleven pages of testimony of Officer Livingston, to ask the officer what the basis of the arrest was. In fact there is no testimony that Livingston placed defendant under arrest at all. An odd lack of testimony as the information was also based on Livingston's conduct of the arrest. The only testimony at all in regard to Officer Livingston's intention was in answer to a leading question by counsel which the Court accurately reflects in its discussion of Livingston's testimony.

Simply, there is no evidentiary basis for the giving of Instruction # 19, and the resisting arrest charge must be reversed. We need not inquire further into the subtleties of the resisting arrest statute and the morass of the cases. The discussion of resisting arrest is dicta. Further, reliance on *State v. Brooks*, 158 S.W.3d 841 (Mo. App.E.D.2005) is misplaced in any case where the State pursues felony resisting as in *Brooks* Id. the State *conceded* that there was only misdemeanor resisting thus all the conclusions drawn in *Brooks* concerning resisting arrest are likewise dicta.