

# In the Missouri Court of Appeals
## Eastern District
### DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED102459 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | Honorable Thomas C. Grady |
| PERCY BURNETT, | ) | |
| | ) | |
| Appellant. | ) | FILED: June 21, 2016 |

## Introduction

Percy Burnett ("Burnett") appeals from the judgment of the trial court following a jury trial convicting him on one count of felony resisting arrest. The trial court sentenced Burnett to one year in a medium security institution. On appeal, Burnett argues (1) that the State presented insufficient evidence to convict him for felony resisting arrest because no evidence proved that officers arrested him for a felony; and (2) that the trial court should have granted his Batson[1] motion because the State's proffered reason for striking a juror was pretextual.

Because the State did not present sufficient evidence to prove that police contemplated arresting Burnett for a felony, we grant Burnett's first point. However, because the State presented sufficient evidence to convict Burnett for misdemeanor resisting arrest, and the jury found the requisite elements, we enter judgment against Burnett for misdemeanor resisting arrest.

---

[1] Batson v. Kentucky, 476 U.S. 79 (1986).

Burnett's misdemeanor conviction necessitates our review of his Batson point, but we deny that point because Burnett failed to carry his burden to prove that the State's race-neutral explanation was pretextual. Accordingly, the trial court's judgment is reversed, a conviction for misdemeanor resisting arrest is entered, and the case is remanded for re-sentencing.

## Factual and Procedural History

Burnett and his girlfriend ("Girlfriend"), who had been dating for three years, lived together at 3600 Bamburger in the City of St. Louis. On December 5, 2013, police responded to 3600 Bamburger on a call for a "flourishing" or "brandishing of a weapon." Police arrived at the scene and encountered Girlfriend outside the home. Police entered the home, found Burnett hiding in a closet, and arrested him. The State charged Burnett with five felony counts and four misdemeanors. The felony counts were one count of kidnapping, two counts of second-degree domestic assault, one count of armed criminal action, and one count of resisting arrest. The misdemeanor counts were two counts of third-degree domestic assault and two counts of third-degree assault of a law enforcement officer. The State charged Burnett for felony—rather than misdemeanor—resisting arrest because, at the time Burnett allegedly resisted arrest, Officer Sean[2] Fortune ("Officer Fortune") "was making an arrest of defendant for Domestic Assault Second Degree," which is a felony. The case proceeded to a jury trial.

## I.     Voir Dire

During voir dire, the State exercised a peremptory strike on Venireperson 63, Irene Brown ("Brown"). Defense counsel raised a Batson challenge, and the following exchange occurred:

> [Defense]:    Your Honor, I raise a Batson motion with respect to [Brown].
> [Court]:      [Brown], I don't have her as saying too much. I don't have her saying anything in my notes. But she does work for the county

---

[2] Officer Fortune's name is inconsistently spelled in our record. We use the spelling from the State's indictment.

justice services as a correctional officer. Why would you want her off the jury? I think that's a benefit to you. Anyway, you want her on? Under Batson, your point is what? Make a record that she is a black female and there are other similarly situated people. All right? And then we will hear—is that right?

[Defense]: That is correct, Judge.

[Court]: Then we will hear from the State.

[Prosecutor]: Just she is a correctional officer. I don't like correctional officers on my jury. And there's no other correctional officer that wasn't struck.

[Court]: Is there a reason you don't like them?

[Prosecutor]: Not in particular. I don't find them to be particularly honest when it comes to the jury selection process. That has been my experience in my limited time here.

[Court]: Anything in response?

[Defense]: Your Honor, there's nothing about her occupation that the prosecutor questioned or asked about, or rises to any kind of issue of honesty or dishonesty.

[Prosecutor]: But the standard for Batson is a race neutral reason, which her occupation certainly qualifies.

[Court]: Well, I think our history here in this circuit—of course this is the county circuit. This is not the city circuit. Our experience in the city circuit with correctional officers is, shall we say, checkered. Which I don't know if that's what you are driving at or not. But in any event, not an offense to Irene, of course; but I will—I will deny that motion, the Batson motion on Brown indicating as I do, and finding that it is a race and gender neutral reason. All right. Is there anything else?

[Defense]: No.

## II.  Trial

After voir dire, the State presented its case-in-chief. Three of the witnesses were

Girlfriend and two of the police officers who responded to the scene—Officer William Hogg

("Officer Hogg") and Sergeant Robert Ogilvie ("Sgt. Ogilvie").

Girlfriend testified that Burnett was physically violent on the night police responded to

the home. Girlfriend alleged that Burnett, at various times, attempted to stab her with a knife, hit

her, choked her, and stomped on her stomach. At some point, Girlfriend testified that she

escaped the house and encountered police outside. Girlfriend recounted telling police that her

3

arm hurt, but that police "called an ambulance, because [she] couldn't talk." The ambulance transported Girlfriend to the hospital.

A.   Testimony of Officer Hogg and Sgt. Ogilvie

Officer Hogg and Sgt. Ogilvie each testified consistently with one another. After 11:00 P.M. on December 5, 2013, Sgt. Ogilvie responded to the scene. As Sgt. Ogilvie pulled to the rear of Burnett's home, he saw Burnett exit the home and then run back inside. Sgt. Ogilvie broadcasted Burnett's location over the police radio.

Meanwhile, Officer Hogg, who was in another police car, had received a call for a "flourishing" of a weapon. Officer Fortune was also in the car. The officers responded to Burnett's address. Upon arrival, the officers met Girlfriend and Girlfriend's friend outside the home. Officer Hogg testified that Girlfriend was "very frantic," was shaking, and that her voice was "crackly."[3] After speaking with Girlfriend, Officer Hogg walked behind the home to meet with Sgt. Ogilvie to begin searching for Burnett.

The officers searched the basement first, but found no one. Officer Hogg went back outside and asked Girlfriend where she thought the officers could find Burnett. Officer Hogg, Sgt. Ogilvie, and Officer Fortune re-entered the home. After announcing that they were the police, the officers searched the living room and then the closets. Burnett was in a closet under a mound of clothes, with his feet sticking out.

Another officer at the scene advised Burnett that he was under arrest and issued several commands for Burnett to exit the closet. Burnett refused, so Sgt. Ogilvie and Officer Fortune grabbed Burnett by the cuff of his pants. Burnett kicked his legs, but the officers eventually succeeded in pulling him out of the closet. Sgt. Ogilvie told Burnett, who was laying on his

---

[3] Officer Hogg testified about his conversation with Girlfriend, in which she advised him that Burnett had tried to stab her with a knife. However, the trial court struck this testimony from the record after an objection.

4

back, to stand up and put his hands behind his back, but Burnett refused. Burnett kicked both Officer Fortune and Sgt. Ogilvie.

Officer Hogg maneuvered around Burnett and cuffed his left wrist. Officer Fortune and Sgt. Ogilvie attempted to stand Burnett up, but Burnett struggled and fell to the floor. On the floor, Burnett kept rolling over his arm to keep officers from handcuffing his wrist. Officers eventually handcuffed both wrists, and Burnett stopped resisting.

B.    Burnett's Testimony

Burnett also testified about his version of the events surrounding the arrest. Burnett testified that he heard someone at the storm door and hid in the closet. Burnett denied hearing anyone yell, "Police." While hiding, Burnett heard the voices over the radios, and he admitted knowing it was the police. Burnett testified that, when he realized it was the police, he decided to wait until they opened the closet door. Burnett remembered a police officer opening the closet door and commanding him to exit. Burnett claimed that he tried to obey the command, but he "was grabbed by the hand and snatched to the floor." Burnett claimed that he was tased twice by the police. Burnett also denied kicking the officers or resisting arrest.

C.    Verdict and Sentencing

Burnett moved for judgment of acquittal at the close of all evidence, and the trial court denied that motion. The jury found Burnett guilty of felony resisting arrest, but acquitted him on the remaining counts. Burnett filed a motion for new trial, which the trial court denied. The trial court sentenced Burnett as a prior and persistent offender to one year in a medium security institution, with credit for time served. This appeal follows.

Points on Appeal

Burnett raises two points on appeal. First, Burnett argues that the trial court erred in overruling his motion for judgment of acquittal because the evidence was insufficient to support

5

his conviction for felony resisting arrest. Specifically, Burnett asserts that the State did not prove that police arrested him for a felony, which was required to convict him for felony resisting arrest. Second, Burnett argues that the trial court erred in overruling his Batson objection because the State's purported race-neutral explanation for striking Brown was pretextual.

## Discussion

### I.  Point One—Felony Resisting Arrest

#### A.  Standard of Review

In a challenge to the sufficiency of the evidence, our review is limited to a determination of whether sufficient evidence was presented from which a reasonable juror could find the defendant guilty beyond a reasonable doubt. State v. Grim, 854 S.W.2d 403, 411 (Mo. banc 1993). We view all of the evidence and reasonable inferences therefrom in the light most favorable to the jury's verdict, and we disregard all evidence and inferences to the contrary. Id. This Court can draw inferences from either direct or circumstantial evidence. State v. Jordan, 181 S.W.3d 588, 592 (Mo. App. E.D. 2005). However, the inferences must be logical, reasonable, and drawn from established fact. Id.

The State has the burden to present sufficient evidence "to prove each and every element of a criminal case" beyond a reasonable doubt. Id. If the State fails to meet its burden, we must reverse the trial court's judgment. Id.

#### B.  Insufficient Evidence

Under Section 575.150.1,[4] a defendant is guilty of resisting arrest if: "(1) he knew or reasonably should have known that a law enforcement officer was making an arrest; (2) he resisted that arrest by using or threatening to use violence or physical force or by fleeing from

---

[4] All statutory references are to RSMo (Cum. Supp. 2013).

6

the officer; and (3) he did so for the purpose of preventing the officer from completing the arrest." State v. Pierce, 433 S.W.3d 424, 434 (Mo. banc 2014). Normally, resisting arrest is a class A misdemeanor, but it is a class D felony if police arrested the defendant for a felony.[5] Section 575.150.5(1).

Viewing the evidence in the light most favorable to the verdict, sufficient evidence existed to support the elements of misdemeanor resisting arrest. Police found Burnett hiding in a closet, and an officer informed Burnett that he was under arrest and commanded him to exit the closet. Burnett admitted knowing that it was the police, but he refused to exit. Sgt. Ogilvie and Officer Fortune grabbed Burnett by the cuffs of his pants in attempted to remove him. Burnett kicked his legs while officers attempted to remove him from the closet. After officers removed Burnett from the closet, he continued to resist by kicking Sgt. Ogilvie and Officer Fortune. Before Officer Hogg successfully handcuffed Burnett, Burnett turned over on his stomach and tucked his right arm underneath his chest. Burnett's knowledge that the officers were the police and his subsequent refusal to allow police to handcuff him supports the reasonable inference that Burnett's purpose was to prevent officers from making an arrest. Therefore, sufficient evidence existed to prove beyond a reasonable doubt that Burnett knew the officers were making an arrest, Burnett resisted the arrest using force, and Burnett's purpose was to prevent the arrest.

Accordingly, the sole issue on appeal is whether the State presented sufficient evidence to convict Burnett for *felony* resisting arrest. The State charged Burnett with felony resisting arrest because Officer Fortune "was making an arrest of [Burnett] for Domestic Assault Second Degree," which is a felony.

---

[5] Resisting arrest can be a felony for other reasons, which are also specified in Section 575.150.5. None of these additional reasons are relevant to this case.

7

The relevant inquiry is not whether Burnett was guilty of second-degree domestic assault, but "whether the arresting officer contemplated making a felony arrest." Jordan, 181 S.W.3d at 592. The State presented no direct evidence about whether Officer Fortune contemplated making an arrest for felony second-degree domestic assault because Officer Fortune did not testify. Neither Officer Hogg and Sgt. Ogilvie, each of whom participated in the arrest, testified as to the nature of the charge for which Burnett was arrested.

Given our standard of review, we must determine whether the collective testimony of the witnesses allowed the jury to draw a reasonable inference that Officer Fortune contemplated arresting Burnett for felony domestic assault in the second degree. See Jordan, 181 S.W.3d at 592. The record before us establishes that Officer Fortune received a call for flourishing or brandishing a weapon, which supports the reasonable inference that Officer Fortune believed Burnett had a weapon. When Officers Fortune and Hogg arrived on the scene, they met Girlfriend outside the home. Girlfriend's testimony indicated that she told police her arm hurt, but she could not talk, so police called an ambulance. Officer Hogg testified that Girlfriend was very shaky and frantic, and that her voice was crackly. Officer Hogg also testified that Girlfriend complained of arm pain, but that she otherwise had no injury to her face and no cuts. Given this information, we are unable to determine form the record the specific reasons for which Officer Fortune arrested Burnett.[6]

We have reversed a similar inferential case for felony resisting arrest. In State v. Jordan, Defendant drove away from a police officer and led police on a chase through a residential

---

[6] In arguing that officers arrested Burnett for a felony, the State makes two incorrect factual assertions. The State asserts that officers encountered Girlfriend, who reported that Burnett had tried to stab her. However, the trial court struck this testimony from the record after an objection. Second, the State asserts that Burnett was subsequently charged with nine felonies; thus, Burnett *was* arrested for a felony. Our review of the record indicates that Burnett was charged with five felonies and four misdemeanors; in particular, the State charged both felony (Counts 2 and 4) and misdemeanor (Counts 6 and 7) domestic assault.

neighborhood. Jordan, 181 S.W.3d at 590–91. After a collision, Officer Livingston walked up to the Defendant's car in an attempt to "bring him under control ... and stop the vehicle." Id. at 593. Defendant resisted the arrest by grabbing Officer Livingston's arm and attempting to pull him into the vehicle. Id. at 591. We noted, "At no point in Officer Livingston's testimony did he indicate contemplating arresting Defendant or that he intended to arrest Defendant for a felony." Id. at 593. We found that Officer Livingston could have contemplated arresting Defendant for a variety of different charges, both felony and misdemeanor, stemming from the police chase. Id. Thus, we held that the evidence did not establish "a basis for a felony arrest beyond a reasonable doubt." Id. We further recognized that it "would have been simple for the State to show what the officer was arresting [Defendant] for [at that moment]." Id. (quoting State v. Bell, 30 S.W.3d 206, 208 (Mo. App. S.D. 2000)). The State could have simply asked Officer Livingston his reason for the arrest. Id. Thus, this Court reversed Defendant's conviction for felony resisting arrest. Id.

State v. Bell followed the same logic. In Bell, two men, including a man named Kenneth, were assaulting a police officer. Bell, 30 S.W.3d at 206. Two other officers arrived to break up the fight. Id. As the officers were attempting to arrest Kenneth, a large crowd had formed. Id. at 207. Bell was in the crowd that had gathered. Id. An officer noticed that Bell was throwing rocks. Id. Bell responded, "You don't know who you're messing with." Id. The State charged Bell with felony interfering with Kenneth's arrest, which required proof that Kenneth was being arrested "for a felony." Id. The Southern District found no direct evidence in the record indicating the officer's reason for Kenneth's arrest. Id. While Kenneth was obviously assaulting a law enforcement officer, the Court noted that such acts could have been charged as a felony or a misdemeanor. Id. at 208. In reversing Bell's conviction, the Court continued:

9

In the present case, it may have been probable that [Kenneth] was being arrested for felony assault on a law enforcement officer, as there was evidence of a severe and prolonged attack upon the arresting officer by [Kenneth]. But the evidence falls short of establishing this basis for arrest beyond a reasonable doubt. There was a variety of charges for which [Kenneth] could have been arrested. It would have been simple for the State to show what the officer was arresting [Kenneth] for. Failing to show this, when it could have been easily established, casts doubt on the State's contentions.

Id.

Our case is indistinguishable from Jordan and Bell. Here, the State presented no direct evidence that Officer Fortune contemplated arresting Burnett for felony second-degree domestic assault. Attempting to cause physical injury to a member of your household by using a deadly weapon (such as a knife) or by choking is felony second-degree domestic assault. Section 565.073.1. Given the evidence presented, it might have been *probable* that Officer Fortune was arresting Burnett for felony domestic assault. Girlfriend testified that Burnett had attempted to stab her with a knife and had choked her. However, the record lacks any evidence to establish that Officer Fortune had knowledge of Girlfriend's accusation against Burnett prior to Officer Fortune arresting Burnett. We note that the State also charged Burnett with two misdemeanor counts of domestic assault for attempting to cause physical injury to Girlfriend. As in Jordan and Bell, it is possible from the record before us that Officer Fortune might have contemplated arresting Bell for either misdemeanor *or* felony domestic assault.

Further, we note that the State could have easily established Officer Fortune's reason for the arrest by simply calling him as a witness and asking him. The State also could have strengthened the inference that Officer Fortune contemplated arresting Burnett for a felony by asking Officer Hogg his reason for the arrest. The State did neither. Such failure to show Officer Fortune's reason for the arrest, when the State could have easily established that fact, casts doubt on the State's case.

10

Because Officer Fortune might have contemplated arresting Burnett for either misdemeanor or felony domestic assault, and because the State failed to establish Officer Fortune's reason for Burnett's arrest, we hold that the State did not present sufficient evidence to prove *felony* resisting arrest beyond a reasonable doubt. See Jordan, 181 S.W.3d at 593; Bell, 30 S.W.3d at 208.

While we must reverse Burnett's conviction for felony resisting arrest, outright reversal is not required. Bell, 30 S.W.3d at 208. The State proved—and the jury found—each element for *misdemeanor* resisting arrest beyond a reasonable doubt, as noted above. See id. Thus, we enter a judgment of conviction for the class A misdemeanor of resisting arrest under Section 575.150. Point One is granted.

## II. Point Two—Batson Objection

While we granted Point One, we entered a misdemeanor conviction. As a result, Burnett's Batson point is still a live issue for our review.

### A. Standard of Review

We give considerable deference to the trial court's ruling on a Batson challenge because the trial court largely bases its ruling on an analysis of the prosecutor's credibility and demeanor. State v. Carter, 415 S.W.3d 685, 689 (Mo. banc 2013). Thus, we overrule the trial court's decision on a Batson motion only if the decision is clearly erroneous. State v. McFadden, 191 S.W.3d 648, 651 (Mo. banc 2006). A decision is clearly erroneous if we are left with a "definite and firm conviction that a mistake has been made." Id.

### B. Batson Framework

Using a peremptory strike on a potential juror because of that juror's race violates the Equal Protection Clause. Batson, 476 U.S. at 89. Missouri courts have established a three-step procedure for evaluating a Batson challenge. Carter, 415 S.W.3d at 688.

11

First, the party raising the <u>Batson</u> challenge must identify specific members of the venire panel that were struck and the racial group to which they belong. <u>Id.</u> Second, the party exercising the strike bears the burden to offer a reasonably specific and clear race-neutral explanation for the strike. <u>Id.</u> at 689. We deem the proffered explanation race-neutral if it is not inherently discriminatory. <u>Id.</u> (citing <u>State v. Marlowe</u>, 89 S.W.3d 464, 468–469 (Mo. banc 2002)). Third, if the second step is satisfied, the burden shifts back to the party raising the <u>Batson</u> challenge to prove that the proffered explanation was pretextual and that the strikes were racially motivated. <u>Carter</u>, 415 S.W.3d at 689.

### 1. <u>Batson</u> Objection and the State's Proffered Reason

Here, Burnett properly objected to Brown and identified her as an African-American, which is a protected class under <u>Batson</u>. The State then proffered a reason for striking Brown:

| [The State]: | Just she is a correctional officer. I don't like correctional officers on my jury. And there's no other correctional officer that wasn't struck. |
|---|---|
| [The Court]: | Is there a reason you don't like them? |
| [The State]: | Not in particular. I don't find them to be particularly honest when it comes to the jury selection process. That has been my experience in my limited time here. |

The trial court properly found that the State's explanation was race-neutral because employment is a valid race-neutral reason for a peremptory strike. <u>State v. Johnson</u>, 207 S.W.3d 24, 37 (Mo. banc 2006) (quoting <u>State v. Williams</u>, 97 S.W.3d 462, 472 (Mo. banc 2003)). Further, the fact that Brown was a corrections officer was not "inherently discriminatory." <u>Marlowe</u>, 89 S.W.3d at 468–469. Because the State met its burden to provide a valid race-neutral reason for striking Brown, the burden shifted back to Burnett to prove that the State's proffered reason was pretextual. <u>Carter</u>, 415 S.W.3d at 689.

12

## 2. Pretext

We determine whether a race-neutral explanation is pretextual by considering the plausibility of the explanation in light of the totality of the facts and circumstances. State v. Murray, 428 S.W.3d 705, 711 (Mo. App. E.D. 2014). "A plausible explanation is one that is race-neutral, clear and reasonably specific, legitimate, and related to the facts or issues of the case." Id. Conversely, implausible or fantastic justifications may (and probably will) be found to be pretext for discrimination. Marlowe, 89 S.W.3d at 469. Additionally, several non-exclusive factors aid us in determining pretext, including: the State's explanation in light of the circumstances; similarly situated jurors not struck; the logical relevance between the explanation and the case; the demeanor of the State and the excluded venire members; the court's prior experiences with the prosecutor's office; and any other objective measures relating to motive. State v. Johnson, 284 S.W.3d 561, 571 (Mo. banc 2009). Although the presence of similarly situated jurors who remain on the panel is "crucial," and "often determinative of pretext," their presence or absence is not dispositive. Murray, 428 S.W.3d at 711 (quoting State v. Bateman, 318 S.W.3d 681, 684, 690 (Mo. banc 2010)).

To demonstrate pretext on appeal, Burnett advances four main arguments, three of which were not raised before the trial court. First, Burnett relies on McFadden, 191 S.W.3d at 653, for the proposition that mere reliance on occupation as a reason for strike, without more, is pretextual. Second, Burnett asserts that trial counsel showed pretext by saying, "Your Honor, there's nothing about her occupation that the prosecutor questioned or asked about, or rises to any kind of issue of honesty or dishonesty." Third, Burnett points to Venireperson Livingston as a similarly situated venireperson who the State did not strike. Fourth, Burnett argues that four of the twenty-four jurors qualified after strikes for cause were from a protected class, and the prosecution struck all four. Defense counsel did not raise the first, third, or fourth arguments

13

with the trial court. Reviewing courts generally will not consider arguments that were not before the trial court; thus, we will not fully address those arguments here. Carter, 415 S.W.3d at 689.

Burnett's only argument before the trial court—that nothing about Brown's occupation or the prosecutor's questioning of Brown raised an issue of dishonesty—did not demonstrate clear error. A trial court's ruling on a Batson challenge receives considerable deference from reviewing courts because it is largely based on an analysis of the prosecutor's credibility and demeanor. Carter, 415 S.W.3d at 689. The prosecutor asserted that corrections officers, in her personal experience, tended to be dishonest. Brown was a corrections officer. The trial court accepted the prosecutor's explanation and noted, "Our experience in the city circuit with correctional officers is, shall we say, checkered." After the trial court accepted the prosecutor's rationale, defense counsel made no further record. The trial court stood in a better position than this Court to determine the credibility and plausibility of the State's explanation. Id.

Our record contains little regarding the other factors in the totality of the circumstances. Defense counsel did not identify a similarly situated juror at trial.[7] The close connection between corrections officers and the criminal justice system provides at least some logical relevance to this criminal trial, particularly because Burnett was charged with resisting an officer's lawful arrest and assault of a law enforcement officer. Defense counsel did not raise, and our record does not address, the demeanor of Brown or the prosecutor at trial. Finally, the trial court did not make a finding about its prior experience with the prosecutor's office or the individual prosecutor.

---

[7] For the first time on appeal, Burnett points to Venireperson Livingston, who worked for the postal service. We reject Burnett's contention that Livingston and Brown were similarly situated because both worked for the government. The State's rationale was that corrections officers tended to be dishonest in the prosecutor's experience, not that all government employees tended to be dishonest.

14

Because defense counsel bore the burden of proving pretext, defense counsel also bore the burden to create a record that would allow for meaningful appellate review. Burnett's arguments on appeal—in particular, Burnett's assertion that the prosecutor used peremptory strikes on all four qualified jurors belonging to a protected class,[8] and the prosecutor's reliance on Brown's employment with little additional explanation[9]—raise some concern about the prosecutor's motives. Nevertheless, defense counsel did not raise these arguments at trial. Thus, the trial court did not consider these arguments, develop an adequate record, or make relevant factual findings. Without an adequate record, we are not left with a definite and firm impression that the State's reason for striking Brown was pretextual.

Because we are not left with a definite and firm impression that the trial court erred in denying Burnett's <u>Batson</u> motion, we cannot find clear error. Point Two is denied.

---

[8] Not only did defense counsel fail to raise this issue with the trial court, we cannot find any support for this argument in the record. Burnett's brief cites to his motion for new trial to support this proposition. The motion for new trial, in turn, simply makes the same unsupported assertion.

[9] We recognize that mere incantation of the juror's employment is insufficient to overcome any showing of pretext because the third step in the Batson analysis would therefore be illusory. <u>McFadden</u>, 191 S.W.3d at 653. In other words, identifying a juror's employment is not a trump card for the State in the pretext analysis. In <u>McFadden</u>, the prosecutor's reason merely stated that the venireperson "was an employee of the St. Louis City School District and would likely be liberal" without stating reasons for that belief. Unlike <u>McFadden</u>, the prosecutor here noted her belief that corrections officers tended to be dishonest based on her personal experience in St. Louis. <u>See State v. Hudson</u>, 822 S.W.2d 477, 481 (Mo. App. E.D. 1991) (recognizing that occupation-related explanations are susceptible to abuse, but holding that the trial court did not clearly err in allowing a strike because the prosecutor based his strike of a postal worker on personal dealings with postal workers). Defense counsel could have pressed the prosecutor to provide specific reasons for her belief that corrections officers were dishonest. Had the prosecutor been unable to articulate specific reasons for her belief and merely relied on an incantation of Brown's employment as her rationale for the strike, we might have been more inclined to find clear error under <u>McFadden</u>.

## Conclusion

The judgment of the trial court is reversed. We enter judgment of conviction for the class A misdemeanor of resisting arrest under Section 575.150, and we remand the case for the trial court to sentence Burnett accordingly.

_____
KURT S. ODENWALD, Judge

Sherri B. Sullivan, P.J., concurs.
Lisa P. Page, J., concurs.

16