

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

STATE OF MISSOURI, )
)
Respondent, )
) WD86564
v. )
) OPINION FILED:
) February 4, 2025
TONEY POWELL, JR., )
)
Appellant. )

**Appeal from the Circuit Court of Jackson County, Missouri**
**The Honorable John M. Torrence, Judge**

**Before Division Two:** Janet Sutton, Presiding Judge,
Alok Ahuja and Mark D. Pfeiffer, Judges

Mr. Toney L. Powell, Jr. ("Powell"), appeals from the judgment of the Circuit

Court of Jackson County, Missouri ("trial court"), following a jury trial, which convicted

him of one count of second-degree murder and one count of armed criminal action. On

appeal, Powell raises no claim of error regarding the presentation of evidence at trial nor

the sufficiency of evidence to convict him; rather, Powell appeals only the denial of his

*Batson* challenge during jury selection. We affirm.

## Factual and Procedural History[1]

Powell and Victim[2] were once childhood friends. The two had a falling out because of Victim's anger at Powell for his alleged involvement in an earlier shooting. One day, as Powell walked up to a busy bus stop in downtown Kansas City, he spotted Victim waiting to board the bus. Powell approached Victim and began a conversation that ended when Victim said, "I'm going to push off and bump later." Powell interpreted this statement as a threat and began to walk away. But soon after, Powell turned around and fired multiple shots at Victim, fatally wounding him. Although Powell later claimed that he saw Victim reach for a gun before firing, Victim was unarmed.

Powell was arrested and charged with murder in the second degree and armed criminal action. His case proceeded to trial before a jury.

During jury selection, the State used a peremptory strike on a venireperson who was of Pacific Islander descent ("Venireperson"). Powell raised a *Batson* challenge, asserting the State struck Venireperson because of his race. After the *Batson* challenge was raised, the State provided its race-neutral reason for the strike, which Powell then challenged as pretextual in the following exchange:

---

[1] "On appeal from a jury-tried case, we view the facts in the light most favorable to the jury's verdict." *State v. Boyd*, 597 S.W.3d 263, 267 n.2 (Mo. App. W.D. 2019) (quoting *State v. Shaw*, 541 S.W.3d 681, 684 n.1 (Mo. App. W.D. 2017)).

[2] Pursuant to the directive of section 509.520.1 (Supp. IV 2024), we do not use any non-party witness names in this opinion. All other statutory references are to THE REVISED STATUTES OF MISSOURI (2016), as supplemented through October 19, 2022, unless otherwise indicated.

[The State]:  Judge, this particular venire person did not say anything.[3] And so we had very little information to go off.  So we went off the profession of this person, thinking that as an underwriter they would be much more analytical and less likely to base their verdict more on emotions.  Which, obviously, this is an emotional case having the victim's mother testify.  That was talked about in *voir dire*.  This person just didn't say anything, so we don't have a lot to go on.  So it is solely based off of their profession.

[Powell's counsel]:  Judge, I guess my response to that is I'm a little confused.  If their occupation as being an underwriter that they are going to be more analytical.  I don't see how that is going to be more emotional as well.  I guess that is possible somehow. But those things don't connect in my head. It doesn't seem like a logical proposed reason for striking someone race-neutral.  There are also several other white—

[The State]:  I'm sorry.  If I could just clarify.  I think I was arguing the opposite.  That they would be less emotional, not that they would be more emotional.

[Powell's counsel]:  Okay.  My mistake.  But there are also several other white jurors, Judge, who didn't say anything as well.  And so, we would argue that this is a *Batson* violation for both defendant and for Juror No. 28.

On this record, the trial court denied Powell's *Batson* challenge.

The jury convicted Powell of the crimes as charged and, based upon the jury's recommendation, the trial court sentenced Powell to consecutive terms of imprisonment of eighteen years on the second-degree murder conviction and three years on the armed criminal action conviction.

---

[3] The record indicates that Venireperson did not give a verbal response to any question during *voir dire*.  In fact, Venireperson provided only one affirmative response during *voir dire*:  he raised his hand, along with twenty-five others, to indicate that he owned a gun.  The record also reflects that the State struck a white venire panel member who was silent during *voir dire*.

Powell filed a motion for acquittal or for new trial, which in relevant part, summarily re-raised his *Batson* challenge without further elaboration. The trial court denied his motion. Powell timely appealed. In his sole point on appeal, Powell argues the trial court erred in rejecting his *Batson* challenge.

**Analysis**

"The Equal Protection Clause prevents parties from using peremptory challenges to strike potential jurors on the basis of race." *State v. Carter*, 415 S.W.3d 685, 688 (Mo. banc 2013) (citing *Batson v. Kentucky*, 476 U.S. 79, 89 (1986); *State v. Marlowe*, 89 S.W.3d 464, 468 (Mo. banc 2002)). When a defendant raises a *Batson* challenge, the trial court evaluates it according to the following framework:

> First, a defendant must challenge one or more specific venirepersons struck by the State and identify the cognizable racial group to which they belong. Second, the State must provide a race-neutral reason that is more than an unsubstantiated denial of discriminatory purpose. Third, the defense must show that the State's explanation was pretextual and the true reason for the strike was racial.

*State v. McFadden*, 191 S.W.3d 648, 651 (Mo. banc 2006) (footnotes omitted) (citing *State v. Parker*, 836 S.W.2d 930, 939 (Mo. banc 1992)).

> We review the denial of a *Batson* challenge for clear error:

> The trial court's ruling concerning a *Batson* challenge receives considerable deference from reviewing courts because it is largely based on an analysis of the prosecutor's credibility and demeanor. As such, the trial court's decision will only be overturned if it is clearly erroneous and the reviewing court is left with a definite and firm conviction that the trial court made a mistake.

*Carter*, 415 S.W.3d at 689 (citations omitted). "If the trial court's action is plausible under review of the record in its entirety, an appellate court may not reverse it although

4

had it been sitting as the trier of fact it would have weighed the evidence differently." *State v. Brinkley*, 753 S.W.2d 927, 930 (Mo. banc 1988). When reviewing the entire record, we "cannot identify additional reasons why the prosecutor could have stricken the venireperson but rather must look at whether the reason or reasons given by the prosecutor are race-neutral and, if so, at whether the defendant has shown that the seemingly race-neutral reason or reasons are merely pretextual." *State v. Bateman*, 318 S.W.3d 681, 690 (Mo. banc 2010) (emphasis omitted).

In response to Powell's *Batson* challenge, the State cited Venireperson's silence during *voir dire* and occupation as an insurance underwriter as race-neutral reasons for the strike. This reply satisfied the second step of the *Batson* framework because "[e]mployment is a valid race-neutral basis for striking a prospective juror." *State v. Johnson*, 207 S.W.3d 24, 37 (Mo. banc 2006) (quoting *State v. Williams*, 97 S.W.3d 462, 472 (Mo. banc 2003)); *State v. Nylon*, 311 S.W.3d 869, 882 (Mo. App. E.D. 2010) ("Although the State did not explain why it considered Venireperson Cobb's employment important, the State still met its burden in the second *Batson* step because it must only provide a race-neutral application beyond a mere unsubstantiated denial.").

Thus, to succeed on appeal, Powell must show that the trial court clearly erred in its conclusion on the third step—that Powell did not carry *his burden* of establishing that the State's explanation was pretextual. *See Carter*, 415 S.W.3d at 689 ("The burden then shifts to the defendant to show that the state's race-neutral explanation was merely pretextual and that the strikes were racially motivated.").

"We determine whether a race-neutral explanation is pretextual by considering the plausibility of the explanation in light of the totality of the facts and circumstances." *State v. Burnett*, 492 S.W.3d 646, 654 (Mo. App. E.D. 2016) (citing *State v. Murray*, 428 S.W.3d 705, 711 (Mo. App. E.D. 2014)).

> To determine whether the explanation is plausible, courts consider whether the state's explanation is race-neutral, related to the case to be tried, clear and reasonably specific, and legitimate. In determining whether the proffered explanation is logically related to the case being tried, the court can consider the crime charged and the evidence to be introduced at trial.

*Carter*, 415 S.W.3d at 689 (citations omitted).

"Conversely, implausible or fantastic justifications may (and probably will) be found to be pretext for discrimination." *Burnett*, 492 S.W.3d at 654 (citing *Marlowe*, 89 S.W.3d at 469). Other non-exclusive factors aiding in a determination on pretext include: "the State's explanation in light of the circumstances; similarly situated jurors not struck; the logical relevance between the explanation and the case; the demeanor of the State and the excluded venire members; the court's prior experiences with the prosecutor's office; and any other objective measures relating to motive." *Id.* (citing *State v. Johnson*, 284 S.W.3d 561, 571 (Mo. banc 2009)). "Although the presence of similarly situated panelists who remain on the panel is 'crucial,' and 'often determinative of pretext,' their presence is not dispositive of pretext." *Murray*, 428 S.W.3d at 711 (citing *Bateman*, 318 S.W.3d at 684, 690).

However, as the party with the burden of demonstrating that the State's rationale was pretextual, Powell "also bore the burden to create a record that would allow for meaningful appellate review." *Burnett*, 492 S.W.3d at 655.

6

Here, for the first time on appeal, Powell identifies four white members of the venire panel who he claims were similarly situated to Venireperson but were not stricken by the State. But, Powell ignores that three of these four venire panel members did, in fact, give verbal responses during *voir dire* and that it is entirely possible the responses those venire panel members gave were significant to the State in the decision not to strike them. However, we are unable to entertain that analysis on appeal because Powell failed to make a meaningful record for us to review those verbal responses and any corresponding impact on the State's decision not to strike them. Without an adequate record on this point, we are not left with a definite and firm impression that these three venire panel members demonstrate the State's reason for striking Venireperson was pretextual.

Likewise, the remaining white member of the venire panel that Powell points to for the first time on appeal was employed as a software *salesman*, not an insurance *underwriter*. Yet, Powell summarily concludes that a sales job must be the same as an underwriting job and, accordingly, this evidences the state's racially motivated reason for striking Venireperson. Again, though, Powell made no record of this before the trial court. Thus, we have no colloquy record as to what reasons the State might have given for the differences between a salesman and an underwriter and why the State might have had race-neutral reasons for treating those two venire panel members differently. Suffice to say, we believe these employment positions are sufficiently different that the prosecutor could have plausibly perceived an underwriter to be less "emotional" than a software salesperson. Once again, without an adequate record on this topic, we are not

7

left with a definite and firm impression that the State's reason for striking Venireperson was pretextual.

And, despite Powell's protestations, as long as the State provides some reasonable context as to *why* a certain occupation had led the prosecutor to develop instinctual inferences about that venire panel member, Missouri courts do not require corroborating evidence for that instinctual inference:

> Jury selection is, after all, an art and not a science. By their very nature, peremptory challenges require subjective evaluations of veniremen by counsel. Counsel must rely upon perceptions of attitudes based upon demeanor, gender, ethnic background, *employment*, marital status, age, economic status, social position, religion, and many other fundamental background facts. *There is, of course, no assurance that perceptions drawn within the limited context of* voir dire *will be totally accurate*. Counsel simply draws perceptions upon which he acts in determining the use of peremptory challenges.

*State v. Antwine*, 743 S.W.2d 51, 64 (Mo. banc 1987) (emphasis added).

Likewise, the State may strike a venire panel member based on a belief of how that venire panel member might be emotionally affected by the facts of the case—so long as that belief is not created by the venire panel member's race. *See State v. Johnson*, 207 S.W.3d at 37 (holding that, in the prosecution of the kidnapping, attempted rape, and murder of a six-year-old child, "it was logical for the State to want jurors who had minor children" and that the State's belief that an employee of the division of Youth Services would be sympathetic to the defendant was a legitimate reason for a peremptory strike).

We recognize that merely mentioning a venire panel member's employment— standing alone—is insufficient to overcome a showing of pretext, for the third step of the *Batson* analysis would then largely become illusory. *McFadden*, 191 S.W.3d at 653.

But, in *McFadden*, the prosecutor provided *no* context for *why* the venire panel member's employment was significant to the prosecutor. Unlike *McFadden*, the prosecutor here clearly and rationally explained the context for *why* Venireperson's employment—combined with the absence of any verbal responses during *voir dire*—gave the prosecutor pause and a gut belief that a peremptory strike was necessary.

Powell had the opportunity to create a more thorough record by pressing the State for further explanation on the prosecutor's instinctual beliefs about Venireperson's silence and employment, but he made no such effort. *See Burnett*, 492 S.W.3d at 655 n.9 ("Defense counsel could have pressed the prosecutor to provide specific reasons for her belief that corrections officers were dishonest. Had the prosecutor been unable to articulate specific reasons for her belief and merely relied on an incantation of Brown's employment as her rationale for the strike, we might have been more inclined to find clear error . . . .").

Thus, the State's occupation-based rationale for its strike, when fully explained, went largely unchallenged by Powell.

Based on the record—or lack thereof—that Powell created before the trial court, we do not find that the trial court clearly erred in accepting the State's explanation for its peremptory strike as race-neutral.

Powell's point on appeal is denied.

9

**Conclusion**

The judgment of the trial court is affirmed.

_____
Mark D. Pfeiffer, Judge

Janet Sutton, Presiding Judge, Alok Ahuja, Judge, concur.